RIEHL and another, Appellants, v. DE QUAINE and another, Respondents.

*April 2—April 28, 1964.*

For the appellants there were briefs by *Bittner, Petitjean & Greenwood* of Green Bay, and oral argument by *Robert L. Bittner*.

For the respondents there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan*.

CURRIE, C. J. Plaintiffs raise these two contentions on this appeal:

(1) Mr. Riehl was confronted with an emergency and should be absolved of any negligence as a matter of law.

(2) Mrs. Riehl is entitled to a new trial in the interest of justice because the damages are inadequate.

*Emergency Issue.*

The accident giving rise to Mrs. Riehl's injuries occurred at about 8:30 p. m. on Walnut street, which runs in an easterly and westerly direction between the intersections of such street with Jefferson and Adams streets. The Riehl car was traveling westerly and the De Quaine car easterly. Mrs. Riehl was sitting in the right front seat and another couple who were passengers, in the rear seat. De Quaine, at the time, was sixteen years old, having procured his driver's license about a month before the accident. He was alone in his automobile.

Prior to the accident the Riehl car had come to a full stop at the Jefferson street intersection and the De Quaine car had done likewise at the Adams street intersection. Both stops were made because the stop-and-go lights at these two intersections were on red. The two stop-and-go lights turned green at about the same time. Walnut street has four traffic lanes, two in each direction. Both cars as they approached each other were in their respective inner traffic lanes next to the center line. The Riehl car did so through choice while the De Quaine car was compelled to use the inner lane because another car was proceeding approximately abreast of it in the outer eastbound lane.

The De Quaine car swerved over the center line and its left front struck the left front of the Riehl car a glancing blow and then scraped along its left side. The point of impact was approximately three feet to the north of the center line. Riehl testified he was traveling approximately 15 miles per hour when he saw the De Quaine car start to cross the center line. Riehl applied his brakes and stated he had brought his car to a stop just prior to impact. De Quaine testified he was traveling 15 miles per hour and had just shifted into second gear when the car to his right made contact with his front bumper and "cut me off in front." De Quaine "moved

over a little," meaning he swerved to his left, and the accident happened. The import of his testimony was that he was forced across the center line by the car on his right. He estimated that about half of his car was on the left side of the center line at time of impact. When asked, if he had made an effort to get back on his own side of the street, De Quaine replied, ". . . he was on my right; I had no time to move back before the impact."

If both vehicles were traveling at a speed of 15 miles per hour at the moment when the De Quaine car crossed the center line, their combined speed was 44 feet per second. Therefore, if the Riehl automobile was then but 50 feet distant, Riehl would have only slightly in excess of one second within which to take some action to avoid a collision if both vehicles had continued at the same speed. Allowing time for the bringing of the Riehl car to a stop would not likely prolong such intervening period to a maximum of two seconds. In *Havens v. Havens* (1954), 266 Wis. 282, 63 N. W. (2d) 86, 47 A. L. R. (2d) 1, a driver in a somewhat-analogous position to Riehl was held to be confronted with an emergency as a matter of law where the interval afforded for action was a maximum of three and a half seconds. More recently a maximum period of three seconds within which to react to an invasion of a driver's lane of travel by another vehicle was held to create an emergency. *Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 119 N. W. (2d) 457. See also *Papacosta v. Papacosta* (1957), 2 Wis. (2d) 175, 85 N. W. (2d) 790.

Defendants attach some significance to Riehl's testimony that when he first saw De Quaine invade the north half of the street Riehl thought De Quaine would get back to his own side, but "when I seen that he was not going to get out of my way I stopped." We do not deem that this evidence is sufficient to warrant the inference that Riehl was afforded

such length of time in which to act as would make the emergency rule inapplicable. Defendants urge that Riehl should have turned his vehicle to the right in an attempt to avoid a collision instead of proceeding straight ahead and applying his brakes. The answer to this argument is the statement made in *Klas v. Fenske* (1946), 248 Wis. 534, 546, 22 N. W. (2d) 596:

"It is the well-settled law of this state that an automobile driver who, by the negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, is not guilty of negligence *if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice.*" (Emphasis supplied.)

Defendants contend, because the point of impact disclosed that Riehl had traversed approximately two thirds the distance from Jefferson to Adams streets and De Quaine but one third of such distance, this establishes Riehl was traveling twice as fast as De Quaine. While the stop-and-go lights at both intersections may have been activated from red to green at the same instant, there is still the possibility that Riehl may have started forward before De Quaine. We find nothing in the instant record which would support a finding of illegal speed on the part of Riehl.

Defendants further argue that the jury may have predicated their finding of causal negligence against Riehl on the fact that he drove in the inner of the two westbound traffic lanes, two feet from the center line, when the outer traffic lane was open to his use. He was entitled to use either of the two lanes and it was not negligent for him to drive as he did in the inner westbound traffic lane until such time as he perceived the De Quaine car invading his lane.

Lastly, defendants urge that, if Riehl was confronted with an emergency as a matter of law, so was De Quaine. This

argument assumes that the jury must accept as a verity De Quaine's testimony that the car to his right forced him over the center line in order to avoid a collision with that vehicle. Riehl testified that, while he saw the other car to the right of the De Quaine car, he did not observe such car turn toward the latter. De Quaine testified that there was contact made by this other car and his front bumper and that he showed a police officer paint on his bumper when this occurred. The police officer denied observing any paint on the bumper of De Quaine's car. We conclude that this was not a situation where the jury was compelled to accept De Quaine's testimony as a verity.

We determine that Riehl was confronted with an emergency as a matter of law, and, therefore, the jury's finding of causal negligence on his part is not supported by the evidence.

### Damage Issue.

The physical injuries received by Mrs. Riehl in the accident were moderate in nature and cleared up in a relatively short time. It is plaintiff's contention, however, that she suffers from an incapacitating compensation neurosis, a type of traumatic neurosis, which is permanent in nature, and was caused by the accident. This court in *Heindel v. Wisconsin Traction, Light, Heat & Power Co.* (1919), 169 Wis. 181, 171 N. W. 938, and *Landrath v. Allstate Ins. Co.* (1951), 259 Wis. 248, 48 N. W. (2d) 485, assumed without expressly deciding that traumatic neurosis may be a proper element of damages in an automobile accident case. In *Johnson v. Industrial Comm.* (1958), 5 Wis. (2d) 584, 93 N. W. (2d) 439, it was expressly held that traumatic neurosis is compensable under our Workmen's Compensation Act. Application of the rationale of that holding would require that it also constitute a proper element of damage in personal-injury actions.

We are confident that a great majority of the bench and bar have rightly assumed that damages for traumatic neurosis, when associated with physical injury, are recoverable in personal-injury actions in Wisconsin. Our holding in the recent case of *McMahon v. Bergeson* (1960), 9 Wis. (2d) 256, 101 N. W. (2d) 63, also clearly implied that this was the law. The point in that case upon which the majority and minority divided was whether the impact of the accident had triggered plaintiff's neurosis. The majority held that the impact did not, but defendant driver's tortious conduct had placed plaintiff in a position where a subsequent event did trigger it, and, because of this factor, there could be no recovery for the neurosis, which would not have been produced in a normal individual, absent a showing that defendant driver knew of such susceptibility. In at least one instance it has been mistakenly assumed that the majority opinion in *McMahon* would permit no recovery for traumatic neurosis in automobile negligence cases if plaintiff was more susceptible to neurosis than the normal individual. Campbell, Law Governing Automobile Accidents, 1962 Wisconsin Law Review, 240, 273–279. We disavow such a conclusion. The *McMahon* holding is not to be extended beyond the peculiar and rather bizarre facts there presented.

We turn now to the pertinent evidence bearing on Mrs. Riehl's damages for personal injury and loss of earnings. She was fifty years of age at the time the accident occurred. She had been employed for twenty-five years in a clothing factory and was then earning $1.50 per hour. After the accident she was taken to the hospital and there examined by Dr. Lynn, her attending physician. Her immediate complaint was pain in the left elbow, left knee, left shoulder, neck, and upper abdomen. X rays were negative. Objectively her injuries were multiple abrasions and contusions, and this was Dr. Lynn's diagnosis.

Because, after these abrasions and contusions had been successfully treated and all objective signs of injury had disappeared, Mrs. Riehl still claimed to be incapacitated, Dr. Lynn referred her to a neurosurgeon on February 1, 1961, but he "made no significant findings." Dr. Lynn then referred her to Dr. Caffrey, a psychiatrist, who examined and treated her. He last saw her a few days before trial.

Dr. Caffrey testified as follows: His "impression" of Mrs. Riehl's condition was "psycho-neurotic anxiety reaction with a traumatic neurosis, compensation neurosis, in a narcissistic immature individual. . . . In summary, I feel that this female found herself for the first time in a 'being taken care of role' and liked it. She attributes all of her difficulties, both physical and mental, to the accident. She is a poor candidate for psychotherapy as long as this case is pending." She is concerned about her gallbladder trouble and fears it may turn into cancer although she has had gallstones for ten years. She also is fearful of an operation and at times thinks suicide is the only solution. In his opinion her psychoneurotic depression has incapacitated her from work, it is permanent, and is causally connected to the accident of April 2, 1960. However, at no time did Mrs. Riehl ever express to Dr. Caffrey any anxiety over physical injuries received in the accident, and she was not suffering from any physical injuries when he first saw her ten months after the accident.

Dr. Lynn, who is a specialist in general and chest surgery and not a psychiatrist, testified that in his opinion the accident "did aggravate a pre-existing nervous state, if it existed, or produced an anxiety-depressive reaction."

Dr. Quade, a specialist in neurological surgery, examined Mrs. Riehl for defendants on April 9, 1962, and testified as a medical expert as follows: He made a complete examination including the taking of X rays and performing an electroencephalogram. Both the X rays and electroencephalogram

were normal. His diagnosis was: (1) Central nervous system objectively normal; (2) subjective nervousness, and (3) psychoneurosis. It is his opinion that the psychoneurosis found in Mrs. Riehl is not traumatic in nature. Her complaints are psychiatrically that of a neurosis rather than having any specific relationship to the accident. According to Dr. Quade, Mrs. Riehl attributes all of her conditions to this accident because she is searching for a reason to justify their existence, *i.e.*, to find a scapegoat. In Dr. Quade's opinion this is the typical pattern in this sort of situation.

In October, 1961, about eighteen months after the accident, Mrs. Riehl was confined to a hospital under Dr. Lynn's care. The hospital records disclose that this hospitalization was for treatment for coronary arteriosclerosis with myocardial ischemia, gallbladder trouble, and multiple rheumatic pains. No mention is made in the hospital records of any complaints arising from the accident.

In view of the direct conflict in medical testimony as to whether Mrs. Riehl's neurosis is attributable to the accident, the jury were entitled to find either that it was, or was not, caused by the accident. It is apparent from the award of $350 for loss of earnings and $500 for personal injuries that the jury concluded that the neurosis was not caused by the accident. These awards are not inadequate if the element of neurosis is eliminated.

Counsel for plaintiffs argue that Dr. Caffrey's expert testimony as a psychiatrist should carry more weight than Dr. Quade's expert testimony as a neurosurgeon. The law, however, does not recognize any gradation of experts based on specialized training or practice. So long as a physician qualifies as an expert the weight to be accorded his testimony is for the jury. *Morrill v. Komasinski* (1950), 256 Wis. 417, 41 N. W. (2d) 620.

If the element of the neurosis is eliminated from the alleged injuries sustained by Mrs. Riehl, the awards made by the

jury for her loss of earnings and personal injuries were not inadequate. We are not persuaded that this is a case where we should exercise our discretionary power under sec. 251.09, Stats., and order a new trial on the damage issues in the interest of justice.

### Disposition of the Appeal.

Because of our determination that Mr. Riehl was free from negligence as a matter of law the judgment must be modified so as to award to plaintiffs the full amounts of damages fixed by the jury. As so modified the judgment of Armilia Riehl will be for $850 damages, together with costs and disbursements, and Marvin F. Riehl's judgment will be $650 for damages, together with costs and disbursements.

*By the Court.*—The judgment is modified as provided in the last paragraph of the opinion and, as so modified, is affirmed. Appellants shall be entitled to tax costs on this appeal.