RENNICK, Plaintiff-Respondent, v. FRUEHAUF CORPORATION, Defendant-Appellant.

*No. 75-759. Submitted on briefs February 8, 1978.—
Decided April 5, 1978.*
(Also reported in 264 N.W.2d 264.)

For the appellant the cause was submitted on the briefs of *Wilcox & Wilcox* of Eau Claire.

For the respondent the cause was submitted on the brief of *Doar, Drill, Norman & Bakke* of New Richmond.

DAY, J. This is an appeal from a judgment awarding damages in a products liability action arising out of a truck dumping accident. The plaintiff-respondent,

James Rennick (hereafter plaintiff) owner and driver of the truck claimed damages for injuries received when the box of his dump truck tipped over during dumping operations. The plaintiff alleged that the accident was caused by defects in the load carrying and dumping apparatus. The truck was custom-built, assembled, installed, and later repaired by the defendant-appellant, Fruehauf Corp. (hereafter defendant) shortly before the accident. The defendant brought third-party actions against Valley Motor Co. Inc., Hyco Corp., and Schwartz Mfg. Co. These third-party defendants were granted motions for non-suit. No objection was made and no appeal was taken from these dismissals.

The jury found the defective condition of the truck was caused by defendant's negligence. The jury also found that the plaintiff was not negligent. The jury awarded the plaintiff $58,646.85 in damages. The trial court found the verdict excessive and gave the plaintiff the option of accepting a verdict of $41,146.85 or in the alternative, a new trial on the issue of damages. The plaintiff accepted the lower figure. Defendant appealed from the judgment and plaintiff has cross-appealed from the court's reduction of damages.

The issues on appeal are: (1) Should the plaintiff have been allowed to use a *res ipsa loquitur* inference to prove a defect in the truck? (2) Did the trial court err by granting the third-party defendants' motion for nonsuit? (3) Are the plaintiff's emotional distress damages compensable? (4) Did the trial court abuse its discretion in reducing the jury's damage award? (5) Is the defendant entitled to a reduction in the plaintiff's recovery because of alleged compensation from plaintiff's disability insurance? (6) Did the trial court err in refusing to set aside the verdict or grant a new trial for alleged errors in evidentiary rulings?

The plaintiff had combined a small trucking business with a cattle-feeding and vegetable farming operation

from the 1940's to the summer of 1971, gradually increasing the amount of time he spent trucking. In October, 1971 the plaintiff ordered a new eighteen ton truck with a heavy-duty hoist and an open, tarpaulin-covered aluminum box from third-party defendant, Valley Motor Co. An order was placed by Valley Motor Co. with defendant to custom-build and install the load-carrying and dumping apparatus of the truck. The day after the truck was delivered the plaintiff picked up a load of eighteen tons of corn silage for delivery to a farmer in Cameron, Wisconsin. When the plaintiff attempted to dump the load at the farm the box rose unevenly for about fifteen inches, the left side of the box dropped, and the end of the left side of the twin telescopic hoist broke off.

The next morning the plaintiff took the truck to the defendant for repair. Defendant replaced the broken cylinder, but had trouble correcting jerkiness in the lifting of the hoist. One side of the box would go up faster than the other. Defendant made a number of tests and experiments in an attempt to correct the lifting problem. Defendant installed a flow equalizing valve, and tested the hoist by lifting the load about three feet, at which time the box lifted evenly. The box was almost fully loaded with silage so the defendant did not test the hoist by raising the box completely, although the load could have been dumped in the defendant's lot. An employee of defendant told plaintiff to go dump the truck and bring it back the next day so that the truck box could be reinforced to correct a minor deflection (a 3/16" downward bend in the box).

Plaintiff then drove his truck about forty miles to a farm to unload the silage. Plaintiff positioned the truck on level ground and began to operate the hoist. When the load got up to the second lifting stage, it suddenly dropped on the left side, and then tipped over. The cab did not overturn, but the movement of the cab caused the

plaintiff to fall toward the passenger side of the truck. The plaintiff did not get out of the truck immediately and when he did get out he was "white and shaking," "numb," "shook up" and "did not talk right."

Five hours later the plaintiff was taken to the hospital, and was treated for pain in the shoulder and neck, multiple internal bruises, generalized trembling, and an acute anxiety reaction. The plaintiff remained in the hospital overnight, but his symptoms continued and about two weeks later he was re-hospitalized for a period of eight days and was diagnosed and treated for chronic anxiety reaction and a sprained back and neck.

Plaintiff claimed at trial that as a result of the accident he still has chronic permanent dizziness, tiredness, nervousness, headaches, and his right hand trembles. He claimed he was permanently disabled from engaging in his long-term occupation as a trucker. Plaintiff was sixty years old at the time of the trial in April, 1975.

### Res Ipsa Loquitur.

The defendant contends that the trial court should have granted its motion for directed verdict and for judgment notwithstanding the verdict because the plaintiff failed to prove that the accident was caused by a defective condition of the truck. There was no evidence of a specific defect, but the plaintiff relied on a *res ipsa loquitur* inference from the fact that non-defective dump trucks do not tip over when properly operated. The jury was instructed on the *res ipsa loquitur* theory. The defendant specifically challenges the instruction and argues that the facts of this case do not allow the drawing of a *res ipsa* inference.

For the plaintiff to prevail on a products liability claim he must show, among other things, that the product was in a defective condition when it left the possession

or control of the seller. *Dippel v. Sciano,* 37 Wis.2d 443, 459, 460, 155 N.W.2d 55 (1967). The existence of the defect may be shown by a *res ipsa* type of inference. *Jagmin v. Simonds Abrasive Co.,* 61 Wis.2d 60, 73, 211 N.W.2d 810 (1973).

"The procedural effect of res ipsa loquitur in Wisconsin is that of a permissible inference rather than rebuttable presumption. (citations omitted). As a permissible inference, the effect of the doctrine of res ipsa loquitur is merely to permit the jury to draw a reasonable inference from circumstantial evidence." *Fehrman v. Smirl,* 20 Wis.2d 1, 21, 122 N.W.2d 439 (1963).

In applying the *res ipsa* inference to products liability cases a defect in a product can not be presumed from the occurrence of an unexplained event, but,

". . . When the unexplained event is combined with evidence rebutting the existence of other probable causes, such evidence [is] sufficient to warrant a jury finding a defect." *Powers v. Hunt-Wesson Foods, Inc.,* 64 Wis.2d 532, 540, 219 N.W.2d 393 (1974).

"Thus a res ipsa type of inference is enough to establish a defect if the plaintiff can show that he was properly using the product and can negative other possible causes of the product failure since it left the manufacturer's control. Prosser has said that:

" '. . . He [plaintiff] need not negative entirely the possibility that the defendant's conduct was not a cause, and it is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not.' (footnote omitted).

". . . the burden is on the plaintiffs to prove the product defective but not beyond a reasonable doubt. The plaintiffs only have to introduce evidence which affords a reasonable basis for the conclusion that it was more likely than not that conduct of the defendant manufacturer was a substantial factor in the injury." *Jagmin,* at 61 Wis.2d 73, 74.

In this case the defendant contends that it was inappropriate to allow the jury to draw a *res ipsa* inference because there was also expert testimony that the tipping of the truck could have been caused by the silage freezing or being loaded unevenly. The testimony showed that the silage was moist when it was loaded on the truck on January 18, 1972. When the plaintiff attempted to unload the truck at Cameron that day, the dumping apparatus malfunctioned, but he did unload one ton of silage by hand. The silage was unloaded evenly, from side to side, out of the back of the truck. At that time the silage was not frozen or sticking to the walls of the truck.

On the night of January 18th, the plaintiff left the truck in his unheated shed overnight. The temperature that night might have been as low as fifteen degrees below zero.

The plaintiff arrived with his truck at the defendant's shop at 8:00 a.m. the next day. The truck remained in defendant's garage from 8:00 a.m., January 19th until 4:00 p.m., January 20th. The shop was heated to fifty-five to sixty degrees during the day and to some temperature above freezing at night. The defendant tested the dumping apparatus and one of defendant's employes told the plaintiff to go dump the silage and then return to defendant's shop.

The plaintiff then drove the truck seventy to ninety minutes in temperatures of six to nine degrees to the location of the accident. The plaintiff opened the doors to unload the silage before the accident. The silage did not appear frozen, and was evenly loaded from side to side. When the doors were opened steam rose from the silage inside the truck. After the truck box tipped over, the passenger side of the back of the truck was quite bare of silage.

Testimony suggesting that the silage froze to the truck during the seventy to ninety minute journey came from

Mr. Norman Graham, a mechanical engineer employed by the third-party defendant, Hyco, Inc. Mr. Graham testified that based on weather conditions and type of load, the silage could have frozen. Similar testimony was elicited from Fulton Holtby, an engineering consultant.

These experts opined that because of the weather, the silage on the left side of the truck froze. But the silage on the right side did not freeze, because of heat from an exhaust pipe, the end of which was at least one foot above the top of the box of the truck. This would cause very uneven unloading of the silage when the truck box was raised. The uneven load would then bend one of the hoist cylinders and the truck would tip.

However, there was also testimony that after the accident there was very little silage on the ground behind the truck box. Mr. Holtby testified that silage creates heat when there is a restricted air flow and this truck was covered by a tarpaulin.

The trial court stated in its opinion that ". . . there is no credible evidence that the plaintiff was negligent in the unloading of his truck." The other testimony summarized above ". . . affords a reasonable basis for the conclusion that it was more likely than not that conduct of the defendant manufacturer was a substantial factor in the injury." *Jagmin, supra.* The use of a *res ipsa* inference was proper to prove a defect under these circumstances.

### *Motions For Non-Suit.*

The defendant contends that the trial judge erred in granting the third-party defendants' motions for non-suit. Defendant claims that a different standard of proof of defect was applied to defendant than to the third-party defendants. Although the plaintiff was permitted an in-

ference of defect from defendant's contact with the truck, the defendant contends that the trial judge held the defendant to proving a specific defect against the third-party defendants.

However, the record shows that when the trial judge granted the motions for non-suit the parties raised no objection. Furthermore no appeal was taken from these orders. The judge asked defendant's counsel several times if he opposed the motions. Counsel answered that he did not.

This court affirms the trial judge's ruling. No claimed error occurring in the trial may be reviewed on appeal as a matter of right without first having been raised in the trial court. *Terpstra v. Soiltest, Inc.*, 63 Wis.2d 585, 592–93, 218 N.W.2d 129 (1974).

### Emotional Distress Damages.

The defendant contends that the plaintiff's emotional distress injuries arising from fear of loss of economic livelihood are not compensable. The defendant argues that a plaintiff may not recover for lost earnings and disability claims where these damages arose from fear of economic loss, not from fear for injury to himself.[1] However, we need not reach this argument because here the plaintiff sustained physical injuries at the time of the accident.

As a preliminary matter, this court affirms the finding of the trial court that the plaintiff did sustain physical injury at the time of the accident. A disinterested witness testified at trial that the plaintiff "fell over toward . . . the passenger side of the . . . truck"

[1] This proposition is erroneous. *Piorkowski v. Liberty Mut. Ins. Co.*, 68 Wis.2d 455, 228 N.W.2d 695 (1975).

when the load tipped. The plaintiff did not get out of the truck immediately after the accident, and the witness started calling to him to see if he was all right. The physician who examined the plaintiff on the night of the accident testified that the plaintiff was treated for pain in the shoulder and neck, multiple internal bruises, generalized trembling, and an acute anxiety reaction; all caused by the truck accident in the witness's opinion. Although the plaintiff testified on cross-examination that immediately after the accident he did not know he was hurt, the record contains other evidence that the plaintiff was physically injured in the accident. In its memorandum decision the trial court found that the plaintiff sustained physical injury. We agree.

Damages for traumatic neurosis, when associated with physical injuries, are recoverable in personal injury actions in Wisconsin. *Riehl v. De Quaine,* 24 Wis.2d 23, 30, 127 N.W.2d 788 (1964). In *Riehl,* an auto accident case, the physical injuries sustained by the plaintiff were minor and cleared up in a relatively short time, but plaintiff also alleged an incapacitating psychoneurotic anxiety reaction permanent in nature and caused by the accident. The anxiety was not over physical injuries received in the accident.

More recently this court has held that mental distress caused by an accident is properly compensable. *Vinicky v. Midland Mut. Cas. Ins. Co.,* 35 Wis.2d 246, 253, 151 N.W.2d 77 (1967). In *Vinicky,* a twelve year old boy, a passenger in the car driven by his father, sustained minor physical injuries in an auto accident. His principal damage claim, however, was for emotional distress suffered at the time of the accident and subsequent thereto brought about by the belief that his unconscious father was dead. Although the father was injured, he

did not die. A physician testified that the boy's condition was a hysterical reaction with the possibility of a little brain injury. There was testimony that the boy's later bad dreams, fear of travelling, and difficulty concentrating on school work were caused by the accident and likely to persist. This court held that there was ample evidence to support the trial judge's conclusion that the boy was emotionally injured by the trauma of the accident.

*Vinicky* and *Riehl* illustrate that where the plaintiff can demonstrate physical injury at the time of the accident, plaintiff may also prove and collect damages for emotional injury arising from the accident. Such emotional injury need not arise from the plaintiff's distress over his own physical injuries.

Because the plaintiff sustained physical injury at the time of the accident, we hold his emotional distress damages are compensable.

### *Remittitur.*

Plaintiff asserts that it was an abuse of discretion to reduce the awards for past and future disabilities based on what the plaintiff argues to be the trial court's failure to resolve conflicts in the evidence in favor of the plaintiff.[2] Defendant asserts that the trial court abused its discretion by not giving proper weight to evidence tending to further reduce the awards.

---

[2] The plaintiff may challenge the damage award on appeal even though he has accepted the trial court's remittitur. This rule applies whenever another party has initiated the appeal. *Plesko v. Milwaukee,* 19 Wis.2d 210, 220, 120 N.W.2d 130 (1963); *Kobelinski v. Milwaukee & S. Transport Corp..* 56 Wis.2d 504, 522, 202 N.W.2d 415 (1972).

In his memorandum opinion, the trial judge noted undisputed evidence of plaintiff's past earnings from his trucking operation based on information in the plaintiff's income tax statements for the two years preceding the accident which should have been considered by the jury in awarding damages. The $23,500 award for past economic loss indicated the jury had used the plaintiff's expert's figure, which did not reflect this earnings data. The judge determined that the award was excessive and reduced it to $15,000.

The trial judge further noted testimony of plaintiff's physician that plaintiff had pre-existing back and neck problems, and plaintiff's prior earning ability as reflected in his tax return. The trial court found the jury's award of $30,000 for future pain, suffering, and disability, including future loss of earnings, excessive and reduced it to $21,000.

The trial court's reductions were based on undisputed evidence, and were made pursuant to the rule set forth in *Powers v. Allstate Ins. Co.*, 10 Wis.2d 78, 91–92, 102 N.W.2d 393 (1960). On appeal to this court from a determination by the trial court that the found damages were excessive, this court will not find an abuse of discretion if there exists a reasonable basis for the trial court's determination after resolving any direct conflicts in the testimony in favor of the plaintiff. *Boodry v. Byrne*, 22 Wis.2d 585, 589, 126 N.W.2d 503 (1964). We hold that the trial court did not abuse its discretion in reducing the damage awards.

### $1,500 Reduction.

The defendant claims that it is entitled to a reduction of $1,500 in the amount of the plaintiffs' recovery for loss of wages to date by reason of an alleged disability

payment received by the plaintiff from plaintiff's personal insurance carrier.

In *Karl v. Employers Ins. of Wausau,* 78 Wis.2d 284, 302, 254 N.W.2d 255 (1977), this court held that where neither the trial court nor this court had been apprised of the nature of the particular insurance contract, whether it had a subrogation clause, or whether subrogation was waived, there was no error in the refusal of the trial court to reduce the judgment by the amount of the alleged insurance recovery for medical expenses. Here, there is no evidence in the record of a subrogation clause or whether it was waived. We hold the defendant is not entitled to a $1,500 reduction in the amount of the plaintiff's disability recovery.

### Evidentiary Rulings.

The defendant contends that the trial court erred in its refusal to set aside the verdict and grant a new trial for claimed errors in evidentiary rulings.

The defendant maintains that it was error for the trial judge to permit the plaintiff's attending physician to read from the report of a consulting neurologist. The testimony was admitted based on the rule in *Vinicky v. Midland Mut. Cas. Ins. Co.,* 35 Wis.2d 246, 254, 256, 151 N.W.2d 77 (1967). In *Vinicky,* a medical expert's diagnosis based on medical evidence which he gleaned from the reports of others was admissible, as well as the introduction of the relevant and competent portions of those reports by the adverse party for the purposes of impeachment and in the interests of completeness. However, the Judicial Committee's notes to sec. 908.03(6), Stats. (1975), pertaining to the hearsay exception for records of regularly conducted activity, suggest allow-

ance of medical opinions and diagnoses from hospital records in direct proof.[3] Likewise, the medical opinions and diagnoses contained in the report of a consulting specialist, used by the testifying medical expert in making his diagnosis has sufficient trustworthiness to permit admission in direct proof.

The defendant further argues that it was error to admit the opinion of the plaintiff's economic expert as to future wage loss because proper foundation was not laid. The expert's opinion was based on data that was part of the record. Section 907.03 of the Wisconsin Statutes (1975) requires that "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. . . ."

The defendant claims other errors in evidentiary rulings. However, these claimed errors were not raised in the defendant's post verdict motions. No evidentiary error is reviewable on appeal as a matter of right without the party first raising the matter in his motion after verdict for a new trial. *Michalski v. Wagner,* 9 Wis.2d 22, 30, 100 N.W.2d 354 (1960).

*By the Court.*—Judgment affirmed.

[3] 59 Wis.2d R. 270, Judicial Council Committee's Note §908.03 (6), Stats.