**In re Richard J. HARVEY and Caroline A. Harvey, Debtors.**

**Bankruptcy No. 91–05948–MDM.**

United States Bankruptcy Court, E.D. Wisconsin.

June 3, 1992.

Bruce A. Lanser, Milwaukee, Wis., for petitioner.

Michael J. Widmann, Milwaukee, Wis., for respondent.

## MEMORANDUM DECISION

M. DEE McGARITY, Bankruptcy Judge.

This proceeding came before the court on the trustee's objection to the debtors' amended exempt property schedule. It is a core proceeding under 28 U.S.C. § 157(b)(2)(B). In the amended schedule, Caroline Harvey claimed as exempt, under § 815.18(3)(i)1.c and d of the Wisconsin Statutes, a cause of action for bad faith against a car dealership and an insurance company. The settlement of that action was for $15,000, well under the $25,000 exemption allowed for such an asset. For the reasons stated herein, the trustee's objection is dismissed, with costs of $500 allowed to compensate the trustee for work done in reliance on the exemption schedules originally filed, and the exemption is allowed.

## FACTS

The background of this proceeding is undisputed. In 1986, Caroline Harvey was involved in a serious accident which injured her leg and left her physically disabled. She has not been able to return to work since that accident.

When Mrs. Harvey purchased her car, she also elected to purchase insurance to cover her car payments if she became unable to work. Pursuant to this contract, Western Diversified Life Insurance Company made a few payments after her accident and then stopped. As a consequence, the car was repossessed. The debtor sued the car dealer and the insurance company for bad faith in failing to comply with the contract. The car was eventually returned, although it had been damaged on the car lot. Even worse, the debtor's husband, the co-debtor in this bankruptcy, went to prison as a result of violent acts committed in reaction to the protracted and contentious nature of the lawsuit.

As a result of the alleged bad faith conduct of the insurance company and surrounding events, Mrs. Harvey's pre-existing emotional problems were exacerbated. She suffered from heart palpitations, insomnia, headaches, crying spells, and shakiness, all of which her doctor concluded were symptoms of depression and anxiety. He reported that her emotional distress was caused in large part by the chain of events occurring as a result of her injury and the dispute with the insurance company over her disability policy. Her husband's incarceration also added greatly to her stress. She continues to receive medical treatment for chronic pain in her leg and psychological distress. Her psychiatrist believes treatment will be necessary for some time in the future.

The cause of action was settled after two days of trial in state court after the bankruptcy was filed. Pursuant to the settlement, Western Diversified Life Insurance Company agreed to pay Mrs. Harvey $15,000. The trustee sent notice to all creditors of the settlement, and it was approved by this court without objection. The settlement agreement did not allocate categories of damages.

## DECISION

■ Without question, exemption statutes are to be liberally construed in favor of the debtor. If it is possible to construe the exemption statute in ways that could be both favorable and unfavorable to the debtor, the favorable manner should be chosen. *In re Jackson*, 95 B.R. 590, 593 (Bankr. C.D.Ill.1989), *citing Matter of Barker*, 768 F.2d 191, 196 (7th Cir. (Ill.) 1985); *In re Bates*, 123 B.R. 38, 40 (Bankr.S.D.Ohio 1990). The question now before the bankruptcy court is whether the $15,000 settlement can be claimed exempt by the debtor under Wis.Stat. § 815.18(3)(i)1.c as a "payment, not to exceed $25,000, resulting from personal bodily injury, including pain or suffering or compensation for actual pecuniary loss of the debtor ..." Subparagraph d of the same subsection may also apply because it allows an exemption for future earnings of the debtor or an individual on whom the debtor is or was dependent in an amount reasonably necessary for

the support of the debtor or the debtor's dependents.

Before May 4, 1990, Wisconsin had no exemption statute for a personal injury action. *In re Leck*, 113 B.R. 500, 504 (Bankr. W.D.Wis.1990). The legislative history of the Wisconsin exemption revisions is silent on whether the legislature made a conscious choice in selecting "personal bodily injury" instead of "personal injury," but the former may have been included in the new Wisconsin exemptions because there is a similar provision in the federal exemption statutes, 11 U.S.C. § 522(d)(11)(D). There was a conscious choice, however, in allowing an exemption for a claim for personal bodily injury up to $25,000, *including* pain and suffering. 1989 Wisconsin Act 278, Committee Comments (c).11. This is in contrast with the analogous federal exemption of only $7,500, *excluding* pain and suffering. 11 U.S.C. § 522(d)(11)(D).[1] Both state and federal statutes allow, without dollar limit, exemption of future earnings of the debtor or an individual on whom the debtor is or was dependent in an amount reasonably necessary for the support of the debtor or the debtor's dependents. Wis.Stat. § 815.18(3)(i)1.d. 11 U.S.C. § 522(d)(11)(E). The federal exemption's lower allowable amount and the exclusion of pain and suffering no doubt influenced the debtor's selection of the Wisconsin rather than federal exemptions, as she is entitled to do under 11 U.S.C. § 522(b).

■ Whether the exemption can be allowed for this debtor requires determination of whether the term "resulting from personal bodily injury," as it is used in Wis.Stat. § 815.18(3)(i)1.c, applies to the bad faith claim of the debtor against her car dealer and an insurance company. In other words, what is the nature of the award she received? This is a "first party" bad faith claim made by the debtor against her own insurance company, as opposed to a "third party" claim made by an injured party against a tortfeasor's insurance company. The leading case in Wisconsin on this kind of claim is *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). A bad faith insurance claim is an intentional tort claim, separate from a breach of contract claim. It arises from the implied covenant of good faith and fair dealing in insurance contracts. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement ..." ... "The obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses." Restatement (Second) of Contracts § 205 and comment e (1981). "Ordinarily, a breach of contract is not a tort. However, a contract may create a state of things which furnishes the occasion of a tort." 57A Am.Jur.2d *Negligence* § 119 (1989). The two part test in *Anderson* for bad faith is whether there is the "absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson*, 85 Wis.2d at 691, 271 N.W.2d 368. The insurer may, however, question the validity of a "fairly debatable" claim. *Id.*

■ A plaintiff can, under some circumstances, recover for emotional distress in connection with a bad faith insurance claim, the type of claim made by the debtor in this case. Criteria for recovery of claims for emotional distress in a bad faith action are different from criteria for recovery for emotional distress in other personal injury actions, including negligent or intentional torts. Parameters for recovery in emotional distress causes of action have been established in a number of Wisconsin cases. Where one suffers a physical injury that is compensable, associated emotional injuries are also compensable. *Brantner v. Jenson*, 121 Wis.2d 658, 663, 360 N.W.2d 529 (1985); *Rennick v. Fruehauf Corp.*, 82

---

1. The few cases construing the language of 11 U.S.C. § 522(d)(11)(D) have allowed an exemption for pain and suffering related to the bodily injury but have excluded damages for pain and suffering when there has been no associated physical injury. *In re Sidebotham*, 77 B.R. 504, 506 (Bankr.E.D.Penn.1987) *quoting In re Territo*, 36 B.R. 667 (Bankr.E.D.N.Y.1984), and *In re Lynn*, 13 B.R. 361 (Bankr.W.D.Wis.1981).

Wis.2d 793, 805, 264 N.W.2d 264 (1978); *Vinicky v. Midland Mut. Casualty Ins. Co.*, 35 Wis.2d 246, 253, 151 N.W.2d 77 (1967); *Riehl v. DeQuaine*, 24 Wis.2d 23, 30, 127 N.W.2d 788 (1964). The associated emotional distress need not arise from concern over the physical injuries. *Rennick*, 82 Wis.2d at 805, 264 N.W.2d 264.

■ In early Wisconsin cases addressing emotional distress damages, recovery was denied unless there was a contemporaneous physical injury. *Garrett v. City of New Berlin*, 122 Wis.2d 223, 229, 362 N.W.2d 137 (1985); *Ver Hagen v. Gibbons*, 47 Wis.2d 220, 223, 177 N.W.2d 83 (1970). Eventually, claims for emotional distress without a precipitating physical injury were allowed under certain conditions. In cases where emotional distress results from someone's negligence, the general rule, for public policy reasons, is that emotional distress is only compensable if manifested physically. *Garrett*, 122 Wis.2d at 233, 362 N.W.2d 137, *Ver Hagen*, 47 Wis.2d at 227, 177 N.W.2d 83. *See also Anderson*, 85 Wis.2d at 694, 271 N.W.2d 368. *La Fleur v. Mosher* carved out an exception to the physical manifestation requirement for negligent confinement. 109 Wis.2d 112, 325 N.W.2d 314 (1982). Where it is proved that the emotional distress was intentionally inflicted, proof of damages other than those occasioned by the emotional distress, such as physical manifestation of the emotional distress, is not necessary. However, the plaintiff must prove that the defendant's conduct was extreme and outrageous, that it caused the emotional injury, and that the emotional response was extreme and disabling. *Anderson*, 85 Wis.2d at 694–95, 271 N.W.2d 368, *citing McKissick v. Schroeder*, 70 Wis.2d 825, 832, 235 N.W.2d 686 (1975), and *Alsteen v. Gehl*, 21 Wis.2d 349, 359–61, 124 N.W.2d 312 (1963).

■ In a bad faith claim, emotional distress damages are compensable in two different ways. First, if an insurance company's conduct is so egregious that it meets the *Alsteen* standards, the plaintiff need only prove lack of a reasonable basis to disallow the claim and knowledge or reckless disregard of the lack of reasonable basis. *Anderson*, 85 Wis.2d at 695, 271 N.W.2d 368. No other damages need be proved, but the emotional distress must be severe. *Id.* at 696, 271 N.W.2d 368. Second, if the conduct of the insurance company is not so terrible so as to meet the *Alsteen* criteria but the reasonable basis test for bad faith is proved, substantial damages apart from the emotional distress and loss of contract benefits are necessary. *Id.* at 695–96, 271 N.W.2d 368. Along with the requirement of these other damages is again the requirement that the emotional distress itself be severe. *Id.* at 696, 271 N.W.2d 368.

The award received by Mrs. Harvey does not say it is to compensate her for emotional distress or anything else; it does not even admit liability. Nevertheless, it is clear from the record that she suffered considerable emotional distress, which led her to file the action, and she suffered physical manifestations of the emotional distress. Because of these physical reactions, we do not need to know if she pleaded or could prove intentional infliction of emotional harm. If she could have proved the lack of a reasonable basis to deny her claim and knowledge or reckless disregard of the lack of reasonable basis, she could have been compensated for emotional distress because physical manifestations or other damages were present. *Anderson*, 85 Wis.2d at 695–96, 271 N.W.2d 368.

■ The next question that arises is: If the damages recovered by Mrs. Harvey relate to a recovery for emotional distress and accompanying physical manifestations on her bad faith claim, are such damages exemptible under Wis.Stat. § 815.18(3)(i)1.c for "personal bodily injury, including pain and suffering?" Stated otherwise, do the physical symptoms and related emotional distress meet the *bodily* injury and "pain and suffering" exemption restrictions in the statute?[2] *Black's Law Dictionary*,

---

**2.** In contrast is Maryland's personal injury exemption statute which does not limit its exemp-

tion to damages for personal bodily injury. The law distinguishes between the purposes of two

5th Ed. at page 706, defines "bodily injury" as physical pain, illness or any impairment of physical condition" and "pain and suffering," at page 999, as "not only physical discomfort and distress but also mental and emotional trauma recoverable as elements of damage in torts." Using these definitions, under a liberal construction of the statute and in line with the development of emotional distress damages in Wisconsin, the debtor's physical signs of heart palpitations, insomnia, headaches and shakiness can be construed as the requisite "bodily injury." It follows that the emotional distress is compensable as "pain and suffering." Thus, this court concludes that Caroline Harvey's bad faith claim included both physical and emotional injuries or bodily injuries and pain and suffering as specified in the exemption statute. Whether the physical injuries are secondary to the emotional injuries or vice versa is immaterial in light of the bankruptcy policy of liberal construction of exemption statutes.

The award is not so great that this court can say it is not fully allocable to the debtor's physical and emotional injuries. This is sufficient to make the entire claim one for personal bodily injury and pain and suffering. Therefore, the failure of the settlement agreement to allocate damages does not defeat the debtor's right to the exemption. *See In re Bates,* 123 B.R. 38, 40 (Bankr.S.D.Ohio 1990); *In re Johnson,* 108 B.R. 240, 244 (Bankr.D.N.D.1989); *In re Haga,* 48 B.R. 492, 495 (Bankr.E.D.Tenn. 1985); *In re Territo,* 36 B.R. 667, 670 (Bankr.E.D.N.Y.1984). *But see In re Lester,* 124 B.R. 63, 65 (Bankr.S.D.Ohio 1990) (debtor's claimed exemption under Ohio law for personal bodily injury failed where settlement did not allocate an amount for bodily injury as opposed to pain and suffering or actual pecuniary loss which were not allowed as exempt by the statute). In addition, there might have been an allocation for future earnings of either or both debt-

ors under Wis.Stat. § 815.18(3)(i)1.d., and this is also exempt.

■ There is another compelling reason to find that this settlement results from a personal bodily injury. We know that the debtor sustained a "personal bodily injury" in the accident that began the course of events leading up to the debtor's bankruptcy and this proceeding. Without this initial event, the debtor would not have had the cause of action that she now claims as exempt. The accident caused the disability that gave her a right to payment. In that sense, the claim "results" from the original accident because it is an indispensable act leading to the creation of the claim. One definition of "result" from *Webster's Ninth New Collegiate Dictionary* (1987) is "to proceed or arise as a consequence, effect or conclusion." There was, however, an intervening act which was also indispensable to the creation of the claim, namely the bad faith conduct on the part of the insurance company in not paying the debtor's car payments. The question is whether, given the independence of these two acts, the claim should be found to "result" solely from the later acts of the insurance company, thereby cutting off the causal connection between the bad faith claim and the initial accident. This court holds that it does not. Although it is one step removed, it is not too remote under the law. Both wrongful acts were necessary for the claim to arise; accordingly, the claim "results from" the personal bodily injury just as much as it "results from" the insurance company's conduct. In a similar vein, bankruptcy courts have allowed exemption of loss of consortium damages under the liberal construction of exemption statutes, each requiring a personal bodily injury, as being derived from the spouse's personal bodily injury. *See Matter of Young,* 93 B.R. 590, 594–95 (Bankr.S.D.Ohio 1988) (interpreting Ohio law); *In re Loyd,* 86 B.R. 663, 664 (Bankr.W.D.Okl.1988) (interpret-

---

types of awards: injury to the person and injury to property of the person. Lack of any physical injury would therefore not impair the exemption of a personal injury claim. *Niedemayer v. Adelman,* 90 B.R. 146, 149 (D.Md.1988). Elimination of the term "bodily," as Maryland has

done, avoids the anomaly whereby a debtor having a compensable claim on account of a defendant's outrageous intentional conduct might not be able to claim the damages as exempt because of lack of physical manifestations.

ing Oklahoma law); *Matter of Lynn*, 13 B.R. 361, 363 (Bankr.W.D.Wis.1981) (interpreting federal law). The debtor's bad faith claim is likewise derived from a bodily injury, the injury to her leg. Therefore, the exemption will be allowed.

 The debtor did not list her bad faith claim on her original exempt property schedules, although this and another personal injury claim were disclosed at the § 341 meeting of creditors. An amended exemption schedule was filed. After the trustee reviewed it, he called the debtors' attorney and recommended that the exemption be made clearer. Another amended exemption schedule was filed, but this one likewise does not list a claimed amount for this and the other cause of action. Since it was still not clear what the debtor was claiming or what the estate's interest might be, the trustee tried to obtain information as to the nature of the action. The debtor's insurance claim attorney was not responsive (this is disputed by the attorney), so the trustee had to find other sources of information. In pursuing his inquiry, the trustee fortuitously discovered that two days of trial had taken place without his knowledge or consent, and that the attorney representing the debtor in that action had not been appointed to represent the estate's interest. Needless to say, he attended the next day of trial. After he was satisfied a settlement proposal was reasonable, the trustee sent notice to creditors giving creditors an opportunity to request a hearing. Because of the manner in which the debtor's assets were disclosed and exemptions were claimed, and because of the extra work this required of the trustee, the trustee requested $500 for his time and expenses if this exemption is allowed.

The court has reviewed the affidavit of the trustee outlining his correspondence and court appearances necessitated by the problems he encountered, which could have been avoided had proper disclosures been made and exemptions timely claimed. His affidavit does not state how much time was expended on each entry, but if a minimal amount is assigned to each item of correspondence and court appearance related to the case, well over $500 is due. Although it appears that there will be no assets to administer in this estate, it is equitable that the trustee be compensated from the exempt proceeds payable to the debtor. *Compare In re Patterson*, 128 B.R. 737, 740 (Bankr.W.D.Tex.1991) (absent any equitable consideration presented to the court, trustee recovered statutory fee out of settlement proceeds without impairing debtor's exemption). Therefore, as a condition for the allowance of the debtor's amended exemption schedule, the trustee shall receive $500 for his time and expenses before the settlement funds are distributed to the debtor or her personal injury attorney.

 Since the bad faith claim will be allowed as exempt, it is not necessary to determine fees for Caroline Harvey's personal injury attorney. He performed no services that benefitted the estate and will not be compensated from the estate. He will have to look to the debtor for any compensation.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. A separate order consistent with this decision will be entered.

### ORDER

For the reasons stated in the court's opinion on this date, it is ORDERED:

1. The debtor's exemption of the settlement of her cause of action against Western Diversified Life Insurance Company in the amount of $15,000 is allowed, and the trustee's objection is dismissed.

2. As a condition for the allowance of the exemption, the trustee shall be paid $500 before funds are disbursed to the debtor or her attorney.