Rocky L. CORMICAN, Karen L. Cormican, Aetna Life Insurance Company and Dean Care HMO, Plaintiffs-Respondents,

v.

Bardson T. LARRABEE, Riverview Boat Lines, Inc., and Continental Casualty Company, Defendants-Appellants.†

Court of Appeals

*No. 91-0782. Oral argument January 29, 1992.—Decided September 29, 1992.*

(Also reported in 491 N.W.2d 130.)

†Petition to review dismissed.

For the defendants-appellants the cause was submitted on the brief of *John F. Jenswold* and *Josann M. Reynolds* of *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison. Orally argued by *John F. Jenswold.*

For the plaintiffs-respondents the cause was submitted on the brief of *John Walsh* and *John C. Mitby* of *Axley Brynelson* of Madison. Orally argued by *John Walsh.*

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. The defendants appeal from a judgment awarding the plaintiff Karen Cormican (Cormican) $260,000 damages from an automobile accident, her husband $15,000 for lost consortium and lost

society and companionship, and $2,200 for medical expenses. The defendants are the adverse driver Bardson Larrabee, his employer, and the liability insurance carrier on his truck. The first issue is the recoverability of damages for Cormican's traumatic neurosis, which involves her unfounded obsession after the birth of her child that her medication and treatment for her injuries while she was pregnant caused the child's disabilities.[1] The second issue is whether the special verdict contains overlapping questions regarding damages and results in a partially duplicitous recovery. The last issue is whether Cormican's damages are excessive. We affirm the judgment.

## A. EVIDENCE.

On June 15, 1985, Larrabee's truck rear-ended Cormican's car and pushed it into the vehicle ahead of Cormican's. She sustained the kind of soft tissue neck injury frequently described as a "whip-lash." On the same day she received several diagnostic x-rays and took medication consisting of Robaxisol tablets (a muscle relaxant), Ibuprofen tablets (to treat pain and inflammation) and Valium. On June 30, Cormican learned she was pregnant, and she believed she was pregnant on the day of the accident.

Cormican is a licensed practical nurse. When she learned she was pregnant, she immediately looked up her medications in the Physician's Desk Reference and health care texts. She learned that her medications involved significant risks to, and should not be prescribed for, expectant mothers. The texts did not dis-

---

[1] Her obsession is unfounded in the sense that it has never been established whether her medication or treatment *did or did not* cause her child's disabilities.

close the particular nature of the risks. She knew that x-rays can affect a fetus.

The day she learned she was pregnant, Cormican began to "obsess" about possible damage to her unborn child. The idea that something was wrong with her baby intruded her thinking. Her depression and anxiety increased, she was overcome by guilt, was unable to sleep, and had episodes of hysterical crying. She unsuccessfully sought advice and consultation from physicians, family and friends.

On March 7, 1986, Cormican's child, Jason, was born. He was apparently normal. A psychiatrist testified that Cormican's obsession waned and began to abate with the birth but did not stop. Her feeling that something was wrong continued.

Beginning in mid-July, Jason had shaking episodes. In mid-September, a pediatric neurologist diagnosed his condition as "seizures."[2] Cormican's obsession became more apparent. Jason was later diagnosed as having an orthopedic problem with one foot. Cormican's obsession, a psychiatrist testified, "came roaring back when he had seizures and other problems." She became "convinced and very concerned the accident, the pills, the x-rays had caused Jason's problems" and she searched for confirmation. She could not find "conclusive evidence that these kind of things did or did not cause" Jason's problems.

A psychiatrist testified that the accident caused Cormican to suffer a traumatic neurosis. The neurosis includes an adjustment disorder, depression, obsessive/compulsive behavior, anxiety disorder, excessive worry, excessive need to seek reassurances, crying episodes, a sleep disorder and a feeling of guilt and blaming herself.

---

[2]The pediatric neurologist did not testify. The record contains no evidence explaining the nature of the "seizures."

The basic dispute at trial was whether Cormican's traumatic neurosis ended when Jason was born or continued through the date of trial and is permanent; and, if it is permanent, whether damages are recoverable for her neurosis after his birth. Appellants conceded at oral argument that she had a traumatic neurosis, and, subject to the claim that the verdict allows overlapping awards, that she is entitled to damages up to the date of Jason's birth. Permanence appears no longer to be an issue. But whether she may recover any damages arising out of her traumatic neurosis after Jason was born remains an issue.

Defendants moved the court before the trial that no evidence be admitted concerning Jason's condition or Cormican's concerns regarding his disabilities. The motion was based on the undisputed fact that the automobile accident has not been linked to Jason's disabilities and on the claim that the evidence is inflammatory. The trial court denied the motion, and defendants charge that the evidentiary ruling was error.

### B. DAMAGES FOR CORMICAN'S TRAUMATIC NEUROSIS.

██

We review evidentiary rulings for abuse of discretion. *Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 139, 403 N.W.2d 747, 759 (1987). Defendants' major contention is that the trial court committed an error of law when it denied their motion. To that extent, the issue before us is substantive even though put in terms of discretion. *Brantner v. Jenson,* 121 Wis. 2d 658, 660–61, 360 N.W.2d 529, 530–31 (1985).

Standard negligence analysis applies to this case as it does to any negligence case. If a negligent act was committed and that negligence was a substantial factor in causing the plaintiff's harm, the negligent defendant is liable for unforeseeable as well as foreseeable consequences to the plaintiff, unless public policy dictates that liability ought not attach. *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 484-86, 214 N.W.2d 764, 766-67 (1974).

Larrabee's negligence in causing the accident is conceded. The evidence is that the accident was a substantial factor in causing her traumatic neurosis. One aspect of Cormican's neurosis is the obsession that her treatment and medication while pregnant caused Jason's disabilities. Her obsession is therefore a consequence for which Larrabee is liable. Applying standard negligence analysis, we conclude Cormican is entitled to damages for her neurosis, including damages arising out of her obsession, unless public policy requires otherwise.

Liability is the rule and relief for public policy reasons is the exception. "The cases in which a causally negligent tort-feasor has been relieved of liability are infrequent and present unusual and extreme considerations." *Stewart v. Wulf*, 85 Wis. 2d 461, 479, 271 N.W.2d 79, 88 (1978). Our determination is not a matter of imposing liability but deciding whether not to impose it. For example, it is a "determination to not impose liability . . .." *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976) (quoting *Hass v. Chicago & N.W. Ry. Co.*, 48 Wis. 2d 321, 326, 179 N.W.2d 885, 888 (1970)). "This court, has on occasion, determined not to impose liability . . .." *Stewart*, 85 Wis. 2d at 479, 271

318

N.W.2d at 88. Recovery "may be denied . . .." *Schlomer v. Perina,* 163 Wis. 2d 708, 713, 473 N.W.2d 6, 8 (Ct. App. 1991), *aff'd,* 169 Wis. 2d 247, 485 N.W.2d 399 (1992).

No public policy outlaws recovery for traumatic neurosis generally. Damages are recoverable for a plaintiff's traumatic neurosis caused by a defendant's negligent act, at least when the neurosis is associated with physical injury. *Riehl v. De Quaine,* 24 Wis. 2d 23, 30, 127 N.W.2d 788, 792 (1964). And recovery is allowed even if the plaintiff is more susceptible to neurosis than would be a normal person. *Id.*

The question here is whether public policy requires that no liability be imposed on Larrabee for Cormican's particular traumatic neurosis. The question is one of law. *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 240, 55 N.W.2d 29, 35 (1952). Even if a jury concludes that the defendant's negligence was a substantial factor in producing the plaintiff's traumatic neurosis, the trial or appellate court may conclude for public policy reasons that no liability should attach. *Howard v. Mt. Sinai Hosp., Inc.,* 63 Wis. 2d 515, 518-19, 217 N.W.2d 383, 385, 219 N.W.2d 576 (1974).

The most frequently cited public policy factors a court will consider when deciding whether liability should not attach to damages caused by a defendant's negligence are: (1) the injury is too remote from the negligence; (2) the injury is wholly out of proportion to the defendant's culpability; (3) in retrospect it appears extraordinary that the negligence would have brought about the harm; (4) allowing recovery places an unreasonable burden on the defendant; (5) allowing recovery is

319

too likely to open the way for fraudulent claims; (6) allowing recovery will enter a field having no sensible or just stopping point. *Schuster v. Altenberg,* 144 Wis. 2d 223, 242–43, 424 N.W.2d 159, 167 (1988). Because defendants assert that each of the six factors applies, we discuss each.[3]

1. Cormican's injury is not too remote from Larrabee's negligence. She sustained a traumatic neurosis as a result of Larrabee's negligence. The neurosis is as much an injury as her soft tissue neck injury. The medical testimony is that fifteen days after the accident Cormican developed her neurosis when she learned she was pregnant. Her neurosis includes an obsession. We are not satisfied we should exempt Larrabee from liability on grounds of remoteness.

*Howard* does not compel a different conclusion. In *Howard,* a negligence action, plaintiff claimed damages for her physical injury and for her "phobia" that she might develop a cancer from broken pieces of a catheter which could not be removed from her body. The court held it was contrary to public policy to impose liability for the phobia. *Howard,* 63 Wis. 2d at 523b, 219 N.W.2d at 577. The court said, without further explanation, that

> although there is no question about there being in fact a fear of future cancer, the claim of damages (by way of cancer) is so remote and is so out of proportion to the culpability of the tort-feasor that, as a matter of public policy, we conclude that the defend-

---

[3]Discussing the factors in more than conclusory terms is no easy task. The parties themselves have done little more than list the factors and then assert that each does or does not bar recovery. Litigants who want more than a reactive decision should suggest reasons for the desired result.

ants are not to be held liable for this element of damages.

*Id.* at 519, 217 N.W.2d at 385. Unlike the *Howard* plaintiff whose phobia concerned a non-existent cancer, Cormican's obsession is that her treatment and medication caused a condition that does exist, the disabilities Jason developed soon after his birth.

2. The injury is not wholly disproportionate to Larrabee's culpability. Nothing indicates that Larrabee's negligence was more than ordinary. But we know that the injury, traumatic neurosis, can result from ordinary negligence in ordinary automobile accidents and damages are awardable for the condition. None of the medical witnesses testified that Cormican's obsession is a bizarre or unaccountable aspect of her neurosis. We do not know why the *Howard* court reached its conclusion regarding the injury-culpability ratio in that case. The facts of this case do not convince us we should excuse Larrabee from liability.

3. While no connection (one way or the other) is shown between the accident and Jason's disabilities, we think it not extraordinary that a mother, possessing the information Cormican obtained from medical texts and afflicted with traumatic neurosis, would be obsessed that her medical care during pregnancy caused her child's actual disabilities.

4. Damages for traumatic neurosis are recoverable. Cormican's obsession is part of her neurosis. It is no more unreasonable to impose liability on Larrabee for her traumatic neurosis than it would be for any other neurosis. That her obsession is unfounded in a limited sense is immaterial. Recovery has been allowed for a

mistaken belief causing a hysterical reaction and mental distress. *Vinicky v. Midland Mut. Casualty Ins. Co.*, 35 Wis. 2d 246, 252-53, 151 N.W.2d 77, 81-82 (1967). The award in *Vinicky* was to a twelve-year-old boy who, after an automobile accident, unsuccessfully tried to revive his unconscious father and mistakenly thought his father was dead.

5. Allowing recovery is unlikely to open the way for fraudulent claims. Medical testimony established the connection between the accident and Cormican's neurosis. The jury was instructed that traumatic neurosis associated with physical injury is compensable. To the extent that the association of physical injury with a neurosis is some protection against a fraudulent claim for a mental injury or distress, that safeguard is present.[4]

6. Recovery will not open a field having no sensible or just stopping point. The field was opened long ago. The field is damages for a medical condition caused by the defendant's negligence. The medical condition is traumatic neurosis, damages for which have been recoverable in Wisconsin since 1964 when *Riehl* was decided.

C. EVIDENTIARY RULING.

Having concluded that public policy considerations do not bar Cormican from recovering damages for her traumatic neurosis following the birth of her son, we

---

[4]For fear of fraudulent claims and potentially unlimited liability for mental disturbance, the Wisconsin Supreme Court is reluctant to allow recovery for emotional distress absent accompanying or resulting physical injuries. *La Fleur v. Mosher*, 109 Wis. 2d 112, 115, 325 N.W.2d 314, 315-16 (1982).

briefly review the court's refusal to exclude the evidence regarding her son's disabilities and her concerns. Defendants argue that the evidence was unfairly prejudicial and used to arouse the jury's sympathy and increase the award beyond justifiable limits. Relevant evidence may be excluded if its probative value is outweighed by unfair prejudice. Section 904.03, Stats. Unfairly prejudicial evidence includes evidence which influences the outcome by improper means. *Lease Am. Corp. v. Insurance Co. of N. Am.*, 88 Wis. 2d 395, 401, 276 N.W.2d 767, 770 (1979). Because it does not disclose the trial court's reasoning, we independently decide whether the record provides a basis for the ruling, *State v. Pharr,* 115 Wis. 2d 334, 343, 347, 340 N.W.2d 498, 502, 503–04 (1983), and we conclude it does.[5] The jury needed the evidence to understand the psychiatric testimony. The jury knew that damages were not sought for Jason's disabilities. The jury was told the case is about Cormican and not about Jason. The record satisfies us that the evidence was properly admitted and used for a proper purpose.

We turn to the special verdict issues.

## D. SPECIAL VERDICT.

Defendants assert that Questions 1 and 2 of the special verdict caused the jury to duplicate damages because the questions overlapped as to mental suffering and the jury instructions further muddled the matter. Questions 1a and b directed the jury to determine Cormican's damages for her "pain, suffering, disability and personal injuries" to the date of trial and from the

---

[5]The trial court held that Cormican can recover for an emotional injury unrelated to her own physical injuries. The court did not determine whether unfair prejudice outweighed the probative value of the evidence.

date of trial into the future. Question 2 directed the jury to determine her damages for "mental injury, suffering and disability" to the date of trial and from that date into the future.[6] A personal injury includes a mental injury. Because damages for mental suffering were awardable under both questions, duplication was possible.

Defendants objected to the form of the verdict because of the possible duplication. The trial court responded that the purpose of Questions 1 and 2 was to distinguish between the damages arising out of Cormican's physical injuries and her damages arising out of psychiatric problems. But as defendants point out, Question 1 did not limit recovery to damages for mental suffering in connection with her physical injuries.

"The inartful phrasing of a verdict question can, in an appropriate case, be salvaged by a correct jury instruction on the subject." *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 465–66, 405 N.W.2d 354, 382 (Ct. App. 1987). For that reason, we review the instructions.

The instructions stated that Questions 1a and b pertained to Cormican's personal injuries, and permitted the jury to allow an amount for "impairment of her mental and bodily health" and to consider her "worry and mental distress, if any." We agree that the instructions on Questions 1a and b, read in isolation, further muddle the matter.

However, the instructions on Question 2 focused the jury's attention on Cormican's traumatic neurosis. The instructions on that question referred five times to traumatic neurosis. Thus the jury must have known it was to

---

[6]The jury awarded Cormican $30,000 and $80,000 in response to Questions 1a and b, and $30,000 and $60,000 in response to Questions 2a and b.

award mental suffering damages for Cormican's traumatic neurosis only in its answers to Question 2 and to award mental suffering damages in connection with her physical injuries only in its answers to Question 1.

The parties themselves brought the difference between the two questions to the jury's attention. Cormican's counsel described Questions 1 and 2 as inquiring what sum will reasonably compensate Cormican for her physical injuries "and then what will compensate her for her mental injury." After completing his damages argument regarding "the physical injury," Cormican's counsel turned to the "mental injury." Defendant's counsel separately argued Questions 1 and 2. He discussed Question 1 in terms of Cormican's physical pains and her "neck injury," and discussed Question 2 in terms of her "mental condition" and "traumatic neurosis."

We are satisfied that the jury did not award duplicate damages when answering Questions 1 and 2.

### E. AMOUNT OF AWARD.

Defendants contend that no rational view of the facts can justify the award of $260,000 to Cormican and $15,000 to her husband when her medical expenses were $2,200. Defendants propose that we strike "the duplication of damages awarded in Questions 2a and b" and direct Cormican to choose between accepting a total award thus reduced by $90,000 or undergo a new trial.

We have rejected the claim that the damages are duplicative. The evidence supports the $60,000 award for Cormican's lost earning capacity. The reasonableness of the $15,000 award to her husband is not argued.

The question remains whether the award of $200,000 for Cormican's physical injuries and her mental injury is excessive. Following a full oral argument on the defendant's motion to set aside the award as excessive, the trial court declined to do so. The question is whether the court abused its discretion. *Koele v. Radue,* 81 Wis. 2d 583, 587, 260 N.W.2d 766, 767 (1978). Although the court's reasoning is absent from the record, the defendants do not explain how the court abused its discretion except to point to the difference between Cormican's medical expenses and the award. However, the amount of medical expenses does not necessarily affect the reasonableness of an award for personal injuries. Defendants have failed to show that the verdict is excessive.

We conclude the judgment must be affirmed.

*By the Court.*—Judgment affirmed.