LEONARD (SAMUEL R.), Respondent, vs. BOTTOMLEY and another, Appellants.

*November 11, 1932—February 7, 1933.*

412

For the appellant there was a brief by *Whaley & Paulsen* of Racine, and oral argument by *Vilas H. Whaley.*

For the respondent there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *Harold J. Sporer* and *Charles W. Wratten.*

The following opinion was filed December 6, 1932:

FAIRCHILD, J.   The special verdict is criticised by appellant because certain questions proper in scope are so worded as to carry an impression that there was a failure to operate an automobile on its proper side of the road.   But the verdict contained similar questions with respect to both the appellant and the respondent and studiously refrained from emphasizing the possible fault of either.   This balancing of disadvantages was made possible in this case because there was submitted to the jury the claim of respondent and the counterclaim of appellant which were almost identical in their charges against each other.   The use of the identical questions with relation to each party occurring in the ver-

dict in the manner in which they do, brought about a situation where the jury were asked at the same time to answer a question as to whether the appellant was negligent in that he failed to operate his automobile upon the right half of the road with one like it concerning the respondent. When this is considered and given its true weight the absence of prejudicial error at once becomes apparent.

The evidence that respondent was on his side of the road amply sustains the jury's finding in that particular. The appellant testified to a state of facts which, given an interpretation most favorable to him, would place the left wheel of respondent's car slightly to his left of the road. This evidence was opposed by testimony of the other side to the effect that the respondent was clearly on his side of the road. The son of respondent said that when the collision occurred and the right door of the car, through the open window of which he had his arm resting on the door, opened and he stepped out, he was on the shoulder to the right of the concrete. The testimony of Mrs. Leonard was to the same effect as was that of respondent. That testimony being accepted by the jury, under the circumstances in this case is the controlling testimony on that point and fixes the place of the collision as claimed by respondent. This also determines the question as to respondent's freedom from negligence contributing to his injury. The testimony discloses that he saw the smoke, slowed down, and kept to the right side of the highway. "The wind was in the northwest and was awful gusty. At times it blew more than it did others. . . . Well, at times the road would be a little clearer than others, especially when the green grass was burning and wind blowing at the same time it would completely cover the road."

Before respondent had entered the smoke and with his car to the right of the highway, he was hit by the appellant, who was emerging from the cloud of smoke. It was made

to appear and in fact admitted that it was respondent's intention to continue to move forward in spite of the presence of the smoke, but at the time of the injury he was where he had a right to be and the collision would have occurred had he been in that place and standing still. Under this state of facts it was for the jury to say whether or not the respondent was negligent and their answer in the special verdict is to the effect that he was not. As to appellant's negligence there was a jury question. He took the chances incident to traveling over a highway covered with smoke which interfered with his ability to see in varying degrees. The situation in which he found himself was not altogether of sudden origin, such as was that in which the defendant in *Johnson v. Prideaux,* 176 Wis. 375, 187 N. W. 207, found himself, nor were his acts of the same cautious nature as were those of Prideaux. In the *Prideaux Case* a cloud of dust caused by a passing auto blinded him, and in an effort to stop his car he unconsciously crossed the middle of the road causing a collision. Here the appellant was proceeding in smoke for some distance, and his statement that he struck something the instant this thick cloud obscured his vision indicates that his position on the road was already somewhat uncertain. The coming of this thick cloud of smoke either was not seen by appellant or ignored on the assumption that he could work his way through. His statement that he did not see respondent's car and thought he had hit a culvert suggests that at the time he was confused as to his position on the highway. His movement to the wrong side of the road did not come about through an effort to stop because he could not see, but in his driving on with his vision obscured. As said by the learned trial judge in his decision on motions after verdict, "whether the smoke was observed before entering it, and while its density obscuring the vision came on more or less quickly, its presence and the likelihood of becoming more dense was known to

and must have been anticipated by the defendant, together with the necessity of exercising a higher degree of care. Whether that degree of care which, under the conditions, constituted ordinary care was, in fact, exercised by the defendant, created a jury issue. The jury unanimously decided ordinary care was not exercised. . . .''

The decisions and legislative enactments in this state are to the effect that one operating an automobile under conditions which make it impossible to see objects immediately in front of him and at such a speed he cannot bring his machine to a standstill within the distance he can see ahead of him, is not exercising the ordinary care required of him. *Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629; *Kleist v. Cohodas,* 195 Wis. 637, 219 N. W. 366. At least there was a jury question, and we find no reason for disturbing the finding to the effect that appellant failed to exercise the added caution which the circumstances required in order to protect other travelers upon the highway from injury.

It was alleged and proven that the Farm Mutual Automobile Insurance Company issued to respondent a collision insurance policy insuring the automobile involved in this collision against damage. This damage was paid by the insurance company to respondent, and appellant contends that error was committed because of the failure to make the insurer a party and that by the disclaimer or release hereafter referred to the insurer satisfied any claim that it might have had against the appellant in this case. They point out that payment of a loss by an insurer operates as an assignment to the insurer of the rights of the insured against a tortfeasor responsible for the destruction of the property, and cite *Swarthout v. Chicago & N. W. R. Co.* 49 Wis. 625, 6 N. W. 314; *Allen v. Chicago & N. W. R. Co.* 94 Wis. 93, 68 N. W. 873. This rule is based upon a theory of subrogation, which is the substitution of one person in the place of another with reference to a lawful

claim or right. "It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it." 25 Ruling Case Law, p. 1312. This right to substitution may be abandoned or waived in favor of the insured as well as by assignment to others. Until it is so disposed of or waived, the one who may avail himself of this right ought to be a party to the litigation in which there cannot be a complete determination without the presence of all parties having claim to the cause of action. But the insurance company in this case before judgment disclaimed any right of subrogation, thus leaving the control of the whole cause of action in the insured. This disclaimer having been presented to the court during the trial, such error as may have theretofore existed lost its prejudicial quality. The tortfeasor was thus fully protected against any possibility of being compelled to pay more than once the damage caused by his act. Nothing more can be gained by further proceedings with relation to this matter, and the appellants not having been harmed there is no reason for disturbing the judgment. *Patitucci v. Gerhardt,* 206 Wis. 358, 240 N. W. 385.

There is complaint by appellants against including in the judgment items allowed for witness fees, including mileage of two other plaintiffs whose cases arising out of the same accident were tried under proper stipulation with this case; and against the allowance of premiums paid for bonds furnished to secure the costs ordered because the plaintiffs were non-residents. An examination of the proceedings in taxing costs shows that respondent was not allowed witness fees, but the plaintiffs in the other two cases, Donald Leonard and Luella M. Leonard, were witnesses, and fees and mileage for them were ordered.

Regardless of the relationship which may exist between a party and a witness, the witness would be entitled to the fee and such mileage as might be fairly claimed under the

statute, sec. 325.05. The respondent, his wife and his son, each suffered injury in the same accident and each made his individual claim for damages against the appellant Bottomley. By stipulation the three cases were tried together pursuant to an order duly entered by the court. We have here three distinct cases. The plaintiff is not entitled to witness fees in his individual case. Sec. 271.01, Stats., provides that costs shall be allowed of course upon recovery in an action for tort where the plaintiff recovers more than $50. Among the costs to be taxed are all the necessary disbursements and fees of officers allowed by law, including certain specified items. Sec. 271.03 (12). Witness fees are fixed by sec. 325.05 (1) (b) at $2.50 for each day. Sub. (c) provides for the payment for traveling at the rate of eight cents per mile, and, if the witness is from out the state, from the point where he crosses the state boundary in coming to attend and returning by the usually traveled route between such points. This section also provides that a witness shall not be entitled to fees except for the time he shall be in actual and necessary attendance as such and shall not be entitled to receive pay in more than one action or proceeding for the same attendance or travel on behalf of the same party. Each of the three plaintiffs came to the court for the purpose of being in attendance there in the interest of himself in his individual case. That was the primary and dominant reason for his coming. But having been used as a witness in another case, he is entitled to the fee fixed by statute and the respondent is entitled to tax the proper amount therefor.

The rule was recognized in *McHugh v. Chicago & N. W. R. Co.* 41 Wis. 79, that a party is entitled to tax full fees for his witnesses in a court of record, though the same persons may have attended as witnesses for another party in another cause at the same term. The two witnesses whose fees are under objection were from without the state and

were entitled to be paid at the rate of eight cents per mile coming from and returning to the point where they crossed the state boundary in coming to attend at the place of trial. This is the plain language of the statute, sec. 325.05 (1) (c). In addition to the indication there found that mileage must be for the actual miles traveled after entering the state, sec. 271.11 provides that when there are charges in a bill of costs for the attendance of any witness, such charges for witnesses shall not be taxed without an affidavit stating the distance traveled. This of course means actual miles traveled within the state. The affidavit to support the taxation in this case is so worded that it provides no information on this matter so far as the mileage of Luella and Donald Leonard are concerned. Appellants formally challenged the sufficiency of the proceedings in this particular and the trial court ought to have required a sufficient affidavit and made an allowance guided by the facts or, lacking the same, disallowed the items entirely.

The attempt to tax as a disbursement the amount paid by respondent for the bond he was required to give as security for costs must fail. Again referring to sec. 271.04, we find there the limitation on items of costs and chargeable disbursements, and in this limitation no provision is made for the recovery of the premium paid for cost bonds.

*By the Court.*—Judgment modified, and cause remanded for taxation of costs in accordance with this opinion. In other respects the judgment is affirmed; no costs on appellants to be taxed, respondent to pay clerk's fees.

A motion for a rehearing was denied, with $25 costs, on February 7, 1933.