Roger JINDRA, Rebecca Jindra, Barry Jindra and Scott Heinritz, a minor, by his Guardian ad Litem, John D. Murray, Plaintiffs-Respondents,

v.

DIEDERICH FLOORING, Defendant-Respondent,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, ABC Insurance Company, Dairyland Insurance Company and John Mande, Defendants,

AMERICAN & FOREIGN INSURANCE COMPANY, Defendant-Appellant,

Joseph DIEDERICH and Midwestern National Insurance Corporation, Defendants-Third Party Plaintiffs,

v.

CONTINENTAL WESTERN INSURANCE COMPANY, Third Party Defendant-Respondent-Petitioner.

Supreme Court

*Nos. 92–0640, 92–1529. Oral argument October 13, 1993.—Decided February 23, 1994.*

(Also reported in 511 N.W.2d 855.)

587

For the third party defendant-respondent-petitioner there were briefs by *George Burnett, Donald L. Romundson* and *Liebmann, Conway, Olejniczak & Jerry, S.C.,* Green Bay and oral argument by *Donald L. Romundson* and *George Burnett.*

For the defendant-appellant there was a brief by *Bruce B. Deadman, Jeffrey T. DeMeuse* and *Everson, Whitney, Everson & Brehm, S.C.,* Green Bay and oral argument by *Bruce B. Deadman.*

DAY, J. This is a review of a decision of the court of appeals reversing a judgment of the circuit court for Brown County, Honorable N. Patrick Crooks, Judge, which had granted third-party defendant insurer's motion to reduce judgment for the plaintiffs (the Jindras) by the amount paid contingently to the Jindras by their underinsured motorist (UIM) insurer. The court of appeals reversed and remanded with instructions to award to the Jindras the full amount of damages found by the jury. We affirm the result reached by the court of appeals, but modify the rationale.

We conclude that the UIM insurer waived any potential right to subrogation and relied instead upon a reimbursement agreement with the Jindras. The third-party defendant insurer benefited from this waiver in that the UIM insurer was thereby precluded from attempting to seek subrogation against the third-party defendant insurer. The third-party defendant insurer did not meet the burden of proof for imposing subroga-

589

tion upon the UIM insurer and therefore was not entitled to a reduction of the judgment.

At issue in this case is a payment made by American and Foreign Insurance Company (A&F), an underinsured motorist insurer (UIM), to its insured, the Jindras.[1] The underlying claims in this action arise from an automobile accident in which the Jindras were injured by a vehicle driven by Joseph Diederich. Joseph Diederich was employed by his father's company, Diederich Flooring. Whether Joseph Diederich was acting within the scope of his employment at the time of the accident was a matter of dispute. Since it remained uncertain where liability would lie, the Jindras sued both Joseph Diederich and his employer, Diederich Flooring. Joseph Diederich was sued in his personal capacity; Diederich Flooring was sued on a theory of respondeat superior.

Joseph Diederich's personal liability insurer, Midwestern National Insurance Corporation (Midwestern), had a policy limit of $50,000. Diederich Flooring's insurer, Continental Western Insurance Company (Continental), had a policy limit of $500,000. Whether Continental's coverage would be available to the Jindras depended upon whether the jury would find that Joseph Diederich was acting within the scope of his employment.

A&F, the Jindras' UIM insurer, provides coverage under its policy only when the insured's damages exceed the liability insurance available from the party liable. Since it was apparent that the Jindra's damages would exceed $50,000 (but not $500,000), A&F faced a contingent liability. A&F would have to make payments under the UIM policy only if Joseph Diederich

---

[1] American & Foreign was also involved in the payment of some medical expenses not at issue here.

and Midwestern were found solely liable, but would not be required to pay anything were Continental's higher limits available. So long as the locus of liability remained uncertain, A&F's obligation was merely contingent and it had no legal obligation to make any payments under the UIM policy.

██

Payment by A&F first became an issue when Midwestern, the personal liability insurer of Joseph Diederich, offered to settle with the Jindras. The Jindras notified A&F of Midwestern's tentative settlement offer pursuant to their UIM policy. The settlement offer did not alter the contingent nature of A&F's obligations, but it did force a choice upon A&F because of the procedure outlined in *Vogt v. Schroeder,* 129 Wis. 2d 3, 383 N.W.2d 876 (1986). According to *Vogt,* a UIM insurer faced with a settlement offer from the underinsured motorist's insurer may reject the settlement and yet preserve its subrogation rights against the would-be settlor by advancing the amount of the settlement to its own insured. Midwestern's settlement offer gave A&F precisely this choice with regard to Midwestern. A&F chose to reject the settlement offer and advance its own funds to the Jindras in place of Midwestern's offer. It made a payment of $50,000, the amount of Midwestern's policy limits.[2] This payment took place before trial.

At trial the jury found Joseph Diederich was acting within the scope of his employment. Continental was thus made liable for the damages. The jury found damages for the Jindras in the amount of $141,699.05.

---

[2] The actual settlement offer to the Jindras was approximately $42,000, some $8,000 being paid to other parties. *Jindra,* 173 Wis. 2d at 92.

Continental challenged the verdict in motions after verdict.[3] It argued that the verdict should be reduced by $50,000, the amount A&F had advanced to the Jindras, so as to prevent double recovery. This argument was based upon broad language (since limited) from *Heifetz v. Johnson,* 61 Wis. 2d 111, 211 N.W.2d 834 (1973). Continental argued that the payment of $50,000 by A&F to the Jindras had created a right of subrogation in favor of A&F to the extent of the payment. Since, according to *Heifetz* the right of subrogation belonged to the subrogee (A&F) alone, Continental argued, the claim for $50,000 belonged to A&F and could not be brought or collected by the Jindras. Furthermore, since, as in *Heifetz,* the statute of limitation had been assumed to have run on the subrogation claim, both the right of action and the cause of action would have been extinguished. *Heifetz,* 61 Wis. 2d, at 115. Hence, Continental argued, the plaintiffs could not collect the $50,000 because that claim

---

[3] The transcript of the motions after verdict makes clear that A&F was relying upon its reimbursement claim against its insured, the Jindras, and that its position was understood by all parties. This was apparently not an issue until confusion about how it should be handled arose shortly before trial. At that point A&F felt obliged to assert an amended answer, cross-claim and counterclaim. A counterclaim was asserted against the Jindras for the $50,000 advancement. Continental moved the court to reduce Jindras' judgment by $50,000. A&F opposed the motion, contending that it made no subrogation claim against Continental but was relying upon an agreement with the Jindras providing for the reimbursement of the money. The trial court granted Continental's motion and later denied A&F's motion to reopen the judgment and amend its answer to assert a cross-claim against Continental seeking recovery of the $50,000 they had advanced to Jindra under their underinsured motorist policy provisions.

belonged to A&F alone, and Continental should be allowed a set-off from the verdict in the amount of $50,000. The trial court agreed and the verdict was reduced by $50,000.

The court of appeals reversed the circuit court's judgment and remanded with instructions to award the Jindras the full amount of damages found by the jury to be paid by Continental. We affirm that result. The court of appeals' rationale, however, requires some clarification.

The circuit court concluded that the payment by A&F *necessarily* created a subrogation claim, that only a claim for subrogation could be brought, and were such a claim not brought, A&F would lose all claim on the amount paid. It based this conclusion upon *Heifetz,* citing the following passage:[4]

---

[4] In the transcript of motions after verdict, the court said, "The issue that I would like to take up first is the issue involving the $50,000.00 payment that was made by American and Foreign Insurance Company, and the issues surrounding that $50,000.00 payment. To begin with, I do think that the record is clear that a $50,000.00 payment was made and that that payment was disbursed as is set forth in the letter from Mr. Murray to Mr. Charnholm, and certainly, there appears to be no issue in that regard. The court indeed feels that the *Heifetz* case is a controlling case in regard to this entire matter . . . especially the language . . . at page 124 of that decision, and I would quote as follows: 'Acceptance of payment from an insurer operates as an assignment of the claim to that extent whether or not the policy contains a subrogation agreement. The plaintiff loses his right to sue for any amount received from his insurer.' Thus it would not matter whether the plaintiff in this case has signed a 'subrogation receipt' or not. . . . [I]t appears to be very clear that what the court is saying in *Heifetz* is that acceptance of a payment from an insured [sic] such as the 50,000 payment that was accepted here by Mr. Murray on behalf of the plaintiffs operates

> [A]cceptance of payment from an insurer operates as an assignment of the claim to that extent whether or not the policy contains a subrogation agreement. The plaintiff loses his right to sue for any amount received from his insurer. *Heifetz,* 61 Wis. 2d, at 124.

This language, however, was explicitly limited by this court in *Rixmann v. Somerset Public Schools,* 83 Wis. 2d 571, 577, 579, 266 N.W.2d 326 (1978).[5] *Rixmann* made it clear that "*Heifetz* should not be interpreted as holding that under all circumstances subrogation occurs when an injured party's insurer makes a payment to him and, concomitantly, that the collateral source rule has been abandoned." *Rixmann,* 83 Wis. 2d at 579.[6]

---

as an assignment of the claim to that extent, whether or not a policy contained a subrogation agreement. . . . As I've indicated, I agree with Continental Western's position that *Heifetz* contains a very clear directive that American's only course of action under the circumstances was to cross claim for subrogation; . . ." Cited in Appendix of Petitioner, Continental, pp. 86–87.

[5] *Rixmann* notes that, "[t]here can be little doubt that confusion exists as to the operation of subrogation and the collateral source rule in personal injury cases. [citations omitted]. Much of this confusion can be traced to language found in the opinion of *Heifetz v. Johnson,* 61 Wis. 2d 111, 211 N.W.2d 834 (1973)." *Rixmann,* 83 Wis. 2d at 576.

[6] Justice Steinmetz in his dissent states that the majority "mischaracterizes" *Rixmann* and suggests that "*Rixmann,* in fact, only limits the *Heifetz* holding to cases involving indemnity insurance contracts." We disagree. *Rixmann* never limits its rationale to investment contracts and specifically cites with approval cases applying the collateral source rule to gratuitous payments and other types of payments not fitting into the investment/indemnity dichotomy. *Rixmann,* 83 Wis. 2d at 579–581. Although so-called investment contracts may be a

*Heifetz* must be distinguished from the present situation on other grounds as well. The present case involves the waiver of subrogation by A&F. *Heifetz* did not involve the waiver of subrogation, and it did not purport to preclude the waiver of subrogation. *See, Heifetz,* 61 Wis. 2d at 121–122, and *Lambert v. Wrensch,* 135 Wis. 2d 105, 118, 399 N.W.2d 369 (1987). In *Heifetz* subrogation could be imposed because the insurer and insured had specifically executed a "subrogation receipt and assignment" for the payments made. *Heifetz* 61 Wis. 2d at 113. Owing to the explicit assignment of the subrogated claim, there was no other possibility but to exercise the claim for subrogation. There was no mention of a reimbursement clause. Nor was there any contingency in *Heifetz;* the obligation to pay was absolute.

Accordingly, there are at least three ways in which one may handle a subrogation claim. First, one may bring the claim against the party from whom subrogation is sought. As will be discussed below, the right to subrogation is not automatic, but rather, the party seeking to apply subrogation has the burden of proving the right to subrogation. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 445–446, 360 N.W.2d 33 (1985) (citing *Rixmann,* 83 Wis. 2d at 582).

---

prominent category contained within the collateral source rule, neither the collateral source rule nor *Rixmann* are limited to investment contracts. Nor is the dissent correct to suggest that all indemnity contracts create automatic assignments and therefore preclude all but an action for subrogation. Neither *Rixmann* nor anything in the collateral source rule says that just because a given policy is one of indemnity that only subrogation may be pursued and not a reimbursement action.

Second, one may waive subrogation. One may waive subrogation explicitly in writing, or one may be held to have waived subrogation by conduct. *See Lambert,* 135 Wis. 2d at 118. Waiver here means that a subrogation claim may no longer be sought by the waiving party. In the present case A&F would be held to have waived subrogation in favor of the reimbursement clause owing to the representations it made before the court that it was relying upon a reimbursement claim against the Jindras.

Third, a subrogation claim may be lost by the running of the statute of limitations. This is the narrow situation of *Heifetz,* and also *Lambert.* In *Heifetz* there was no question of waiver or reliance upon other clauses because there had been an explicit assignment of the claim.[7] Thus, since waiver was not a possibility in *Heifetz,* there was nothing to prevent the imposition of subrogation. Once explicitly assigned, the claim had to be brought or lost. Once lost to the statute of limitations, both the right of action and the cause of action were lost, and, therefore the tortfeasor was no longer answerable because the claim was extinguished. See *Heifetz,* 61 Wis. 2d, at 115.

In the case of waiver, however, the tortfeasor benefits by receiving the assurance that it no longer need fear a claim for subrogation from the waiving party. If, as here, a party does not bring a subrogation claim because it relies instead upon a reimbursement clause, it will be held to have waived subrogation in favor of the reimbursement action and will be precluded from

---

[7] In *Lambert,* in different circumstances, it was concluded that waiver had not been effected. *Lambert,* 135 Wis. 2d at 118.

bringing the subrogation claim in a subsequent action against the tortfeasor. Accordingly, Continental will be obliged to pay full damages, but it will not be forced to answer twice in damages.[8]

A somewhat similar situation and solution is seen in *Leonard v. Bottomley,* 210 Wis. 411, 417, 245 N.W. 849 (1933). There the court held:

> [The] right to [subrogation] may be abandoned or waived in favor of the insured as well as by assignment to others. Until it is so disposed of or waived, the one who may avail himself of this right ought to be a party to the litigation in which there cannot be a complete determination without the presence of

---

[8] We perceive no advantage of using the terminology of "assignment" when speaking of the waiver of a potential subrogation claim in favor of a reimbursement claim. Justice Abrahamson in her concurrence says that "[b]y waiver, the insurance company in this case in effect assigned its claim against the tortfeasor to the plaintiff." This presumes that the insurance company had been "assigned" the claim initially and that it then "assigned" the claim back. On the facts of this case, however, A&F had only the *potential* to seek a claim for subrogation. As we discuss below, the burden is upon the one invoking subrogation to introduce evidence to that effect. In this case, A&F did not even seek such a claim. Thus, even though A&F may well have been able to proceed with a claim for subrogation *had* it desired to do so, it did not actually do so. Thus the concurrence is incorrect when it implies (or assumes?) that waiver is only possible or only occurs when a claim has been previously "assigned," and that waiver itself only results in an "assignment." Waiver in this context does not require that the claim be perfected; nor does waiver depend upon assignment. The waiver of even a potential claim serves to protect the party or parties who might have been subject to the claim. That effect is real and complete when made.

all parties having claim to the cause of action. But the insurance company in this case before judgment disclaimed any right of subrogation, thus leaving the control of the whole cause of action in the insured. This disclaimer having been presented to the court during the trial, such error as may have theretofore existed lost its prejudicial quality. The tortfeasor was thus fully protected against any possibility of being compelled to pay more than once the damage caused by his act. *Leonard,* 210 Wis., at 417.

The wrongdoer, or his or her insurer, will be obliged to pay, but only once. In our present case, A&F will receive the opportunity to exercise its reimbursement clause, even if it otherwise might have been able to argue a subrogation claim. However, it may do only one or the other. Having represented its reliance upon the reimbursement clause, A&F would be held to have waived any subrogation claim against Continental and would be precluded from bringing such a claim against Continental in any subsequent action. *See also Patitucci v. Gerhardt,* 206 Wis. 358, 240 N.W. 385 (1932).[9]

---

[9] "[T]he compulsion of the judgment would prevent the payment of the full sum to the insured from operating as a fraud upon the insurer. In such a case the insured would recover the entire amount and hold such portion as properly belongs to the insurance company as trustee. . . . [T]he defendant will be sufficiently protected if the insurance company files a release of its claim or an assignment of its rights to plaintiff, the filing of one or the other of these instruments should be made the condition upon which judgment may be entered for plaintiff." *Patitucci,* 206 Wis. at 363.

The next issue we address is the burden of proof.[10]
We disagree with the trial court's application of the
burden of proof. The standard rule long recognized by
this court is that, "[t]he party who is seeking to prove
subrogation has the burden of introducing evidence to
that effect." *Cunningham,* 121 Wis. 2d at 445–446 (cit-
ing *Rixmann,* 83 Wis. 2d at 582). Ordinarily it is the
subrogee who wishes to prove a right to subrogation,
but the same principles would apply in a situation
when one party seeks to impose subrogation upon
another party. *See, Lambert,* 135 Wis. 2d at 118–119.

The burden of proof in subrogation cases involves
two questions. When a party *requests* subrogation, that
party has the burden of proving its right to subroga-
tion. That involves showing (a) that there is some basis
for asserting subrogation, and, (b) that subrogation
should be *allowed* in those circumstances. The same
rule and burden of proof apply when a party seeks to
*impose* subrogation. The party seeking to impose sub-
rogation has the burden of showing both (a) that there
would be some basis for asserting subrogation in that
instance, and, (b) that subrogation must be applied in
equity in those circumstances. In practice, since subro-
gation is an equitable doctrine favored by the courts,
the burden of proof is more easily satisfied when
*requesting* subrogation than it would be when *imposing*
subrogation.[11]

---

[10] The burden of proof is used here in the same context as it
was cited above from *Cunningham,* 121 Wis. 2d at 445–446. It
begins with the burden of production and includes the burden of
persuasion.

[11] "The remedy of subrogation is highly favored and the
courts are inclined to extend rather than to restrict the princi-

The trial court did apply the proper burden of proof with regard to imposing subrogation when discussing some medical payments not at issue here, when it placed the burden upon the defendants to show that the paying insurer had to rely upon subrogation and only subrogation. As to A&F's payment, however, the burden was improperly shifted. Owing to the overly broad language in *Heifetz,* the circuit court treated A&F's payment as creating an automatic assignment, as seen in the excerpt from the transcript above. Once this erroneous assumption was made, then all that needed to be proven to impose subrogation was the fact of payment. Since all acknowledged the fact of payment, subrogation was imposed. This error left A&F, in effect, with the burden of attempting to prove that subrogation did not apply. However, since Continental was seeking to impose subrogation upon A&F, the circuit court should have placed the burden upon Continental to prove first that subrogation would have been available to a party in A&F's position, and, second that subrogation *had* to apply.

The court of appeals did not address the issue of the burden of proof because it had concluded that A&F was not subrogated to the Jindras' claim. *Jindra,* 173 Wis. 2d at 98. We do not agree with this rationale, but rather base our holding upon the failure of Continental to meet the burden of proof for imposing subrogation.

It is true, as the court of appeals reasoned, that were no subrogation available to A&F, no subrogated claim could have been either assigned or lost. However, it would not be correct to assume that had subrogation rights been available, A&F *necessarily* would have had

ple, and to give it a liberal application." *D'Angelo v. Cornell Paperboard Products Co.,* 19 Wis. 2d 390, 402 n.13, 120 N.W.2d 70 (1963).

to bring a subrogation action or lose all claim on the $50,000. The question in this case is not whether the payment *could* have created subrogation rights, but rather did it *necessarily* do so to the exclusion of all other remedies such as a reimbursement clause.

We observe without holding that an insurer in the position of A&F may well have been entitled to subrogation in equity, had the issue been so presented. This does not mean, however, that subrogation must be *imposed* upon such a party when it does not seek subrogation. A court may find equitable reasons to *grant* subrogation rights in a given situation, when requested, but the same court should refuse to *impose* subrogation when it would be unnecessary and even inequitable to do so. We conclude, therefore, that even if a potential right to subrogation could be shown in these circumstances, a court should require the additional showing that subrogation *should* be applied to the exclusion of other sources of recovery such as a reimbursement clause.

There are two types of subrogation: conventional subrogation (or contractual subrogation) and equitable subrogation (allowed by equity). The burden of proof analysis applies to these types of subrogation as follows. When seeking to impose subrogation under an express contractual provision, the proof is presumably the *existence, see, Rixmann,* 83 Wis. 2d at 582; *Rennick v. Fruehauf Corp.,* 82 Wis. 2d 793, 807, 264 N.W.2d 264 (1978); *Karl v. Employers Ins. of Wausau,* 78 Wis. 2d 284, 302, 254 N.W.2d 255 (1977), and also *applicability* of the provision. *See, e.g., Employers Health Ins. v. General Cas.,* 161 Wis. 2d 937, 956, 469 N.W.2d 172 (1991); *Rock River Lumber v. Universal Mortg. Corp.,* 82 Wis.

601

2d 235, 242, 262 N.W.2d 114 (1978). Clearly, the mere fact that there may be a subrogation clause somewhere in the contract does not mean that all payments made by the insurer to its insured must invoke the subrogation clause to the exclusion of all other applicable provisions. It also follows that when there are two or more different provisions under which the payment by the insurer may have been made, the burden would be upon the one seeking to impose subrogation on the payor to demonstrate that the payment had to have been made under the subrogation clause and not some other clause.

The A&F contract contained two different provisions which could cover a payment made to the insured. Under a section entitled "Our Right to Recover Payment" in the insurance contract, clause A is a standardized subrogation clause, while clause B is a reimbursement, or trust agreement clause. The section reads as follows:

### OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to whom or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

 1. Whatever is necessary to enable us to exercise our rights; and

 2. Nothing after loss to prejudice them. . . .

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery, and

2. Reimburse us to the extent of our payment.

There is also a provision which deals specifically with payments like those under the *Vogt* procedure:

We will pay under this coverage [underinsured motorist coverage] only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgements [sic] or settlements, unless we:
 (1) Have been given written notice in advance of a tentative settlement between an "insured" and the insurer of the owner or operator of the "underinsured motor vehicle"; and
 (2) Decide to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days of written notice of such settlement.

This provision foresees two types of payments under A&F's policy: those payments obligated under the policy because the liable party's insurance limits have been exhausted, and those "advance payments" not made under obligation, but made under discretion when a settlement offer has been made. It seems clear that A&F's payment was made pursuant to the "advance payment" section of the provision above and not made under obligation of the policy.[12] However, our

---

[12] Continental cited the above provision from A&F's policy in its briefs in support of motions after verdict in order to show that A&F was authorized to make the *Vogt* payment under its contract.

decision here is based upon the burden of proof.[13] Applying the proper burden of proof, it was Continental who was obliged to prove that the payment took place under clause A and not under clause B. Again, it was for the party seeking to impose subrogation to prove the subrogation clause did apply, not for A&F to prove that the subrogation clause did not apply.

If there is no express subrogation clause in the contract, or if, despite the presence of a subrogation clause there is some question in equity about whether subrogation should be imposed, then the policy and the circumstances must be analyzed to determine whether there is a basis for equitable subrogation. *See, Cunningham,* 121 Wis. 2d at 446; *Lambert,* 135 Wis. 2d at 116–117. If the contract is found to be one of indemnity, for instance, this court will *allow* the insurer to receive subrogation, even in the absence of an express subrogation clause. *Cunningham,* 121 Wis. 2d at 446 (citing to *Patitucci).*

---

[13] The concurrence states that this case is settled on contractual subrogation because "[t]he insurance policy has an express subrogation clause in the contract that covers this fact situation." However, this is not our holding. The holding is based upon waiver and the failure of Continental to carry the burden of proof for imposing subrogation upon A&F. Our examination of the contract shows it was incorrect to suggest that reimbursement was not possible under the language of the contract. The mere fact that there is a subrogation clause in the contract which may cover a given situation does not mean that the clause was invoked. It was the waiver of subrogation in favor of the reimbursement clause which was dispositive in this case.

Under equitable subrogation, if one seeks to *impose* subrogation upon an unwilling party, one must first prove the *possibility* of asserting subrogation, and, since this is an equitable doctrine, the *appropriateness* of *imposing* subrogation. That is, it must first be shown that subrogation *may* or *could* apply, and then be shown that it *should* apply in equity.

In this context, Continental has failed to demonstrate why equity would require imposition of subrogation to the exclusion of a reimbursement clause in these circumstances. As an equitable doctrine, subrogation is "a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it." *Leonard,* 210 Wis. at 417. "The purpose of subrogation is to place the loss ultimately on the wrongdoers." *Cunningham,* 121 Wis. 2d at 444. There is no reason for imposing subrogation on a party when that party instead elects to rely upon a reimbursement clause in its policy or an agreement. Were we to bar a reimbursement claim every time a theoretical argument could be made for allowing subrogation, reimbursement clauses would be rendered meaningless. Furthermore, as expressed in similar circumstances in *Vogt,* we do not wish to discourage early and contingent payments such as those made by A&F. *Vogt,* 129 Wis. 2d at 23–24. We therefore find no reason to discriminate against reimbursement clauses in the situation presented here. Thus, as in *Vogt,* we "balance the equities" in favor of the underinsurer. "[T]he equities to be balanced are those between the underinsurer, which has paid benefits, and the underinsured tortfeasor, who has not paid for the damages he or she has caused. Between these two parties,

the equities balance in favor of the underinsurer." *Vogt,* 129 Wis. 2d at 17 (citing with approval, *Schmidt v. Clothier,* 338 N.W.2d 256, 262 (Minn. 1983)). Therefore, in the present context we will not impose subrogation to the detriment of a party not seeking subrogation, who instead agrees to rely upon a reimbursement clause with its insured.

Finally, we have reservations about the court of appeals' application of the "volunteer" doctrine within subrogation law. The court of appeals labelled A&F's payment a "voluntary conditional payment." *Jindra,* 173 Wis. 2d at 91. It analyzed the situation as follows:

> American and Foreign paid $50,000 to Jindra, notwithstanding the fact that it had no legal duty to pay at the time payment was made, on the condition that Jindra would repay the money if it was ultimately determined that Continental's policy applied. American & Foreign's payment was voluntary because American and Foreign was not then legally obligated to pay and was conditional because Jindra agreed to reimburse American and Foreign if he was made whole by a judgment against Diederich Flooring and Continental. *Id.* at 96–97.

We agree that the payment was conditional, owing to the contingent nature of A&F's obligations, the circumstances of the payment under *Vogt,* and by the operation of the appropriate clauses in A&F's contract. However, we do not agree with the court of appeals' application of the "volunteer" doctrine.

The general rule is that "[s]ubrogation rests on the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent that he has paid a debt or demand which should have been paid by the wrongdoer." *First Nat. Bank of Columbus v. Hansen,* 84

Wis. 2d 422, 428, 267 N.W.2d 367 (1978), *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977). As we have seen, the circuit court imposed subrogation because A&F failed to show that it would not be entitled to subrogation; i.e., it could not show that it was a volunteer or otherwise precluded from seeking subrogation. The court of appeals reversed, because it concluded that A&F was a volunteer within the doctrine cited above, and therefore not entitled to subrogation.

Although we agree with the court of appeals' result, there are two basic concerns about the court of appeals' analysis which must be addressed. First, the court of appeals' analysis could be misinterpreted as leaving the burden of proof upon A&F. Again, it was not for A&F to prove that it was a volunteer, but rather for the party seeking to impose subrogation to show that A&F could not possibly be a volunteer. Even beyond this, the burden of proof in an equitable subrogation situation would require that Continental show *both* that A&F was not a volunteer, *and,* more importantly, that this fact would necessitate the imposition of subrogation. It was this latter part of the burden which is most important here, and we find no reason to discriminate against reimbursement clauses under the present circumstances.

Second, the court of appeals' assertion that one is a "volunteer" because there was "no legal duty to pay at the time payment was made," *Jindra,* 173 Wis. 2d at 96–97, is a potentially misleading statement of the law in this area. Absolute and clear legal liability of the payor has not been a fixed prerequisite to obtaining subrogation rights. This court has held in several instances that an insurer making payment was not a

607

volunteer if it was *potentially* liable for the obligation, *Perkins v. Worzala,* 31 Wis. 2d 634, 637–639, 143 N.W.2d 516 (1966), even though a jury later found that the payor was entirely free from negligence. *Kennedy-Ingalls Corp. v. Meissner,* 5 Wis. 2d 100, 106–107, 92 N.W.2d 247 (1958).

This does not mean, however, that Continental's argument about the volunteer doctrine is correct. We observe without holding that A&F may well have qualified for subrogation rights had the issue been so presented. The fact that a party may have been eligible for subrogation had it elected to request subrogation does not mean that it must therefore be imposed with subrogation in a situation when it seeks to implement a reimbursement clause instead. Furthermore, while it is true that absolute or completely clear liability has never been required to obtain subrogation rights, it must be noted in this instance, however, that there was no possibility whatsoever that Continental and A&F would be obligated on the same liability. The obligations of A&F and Continental were mutually exclusive. If Continental were not liable, A&F would be. If Continental were liable, A&F could not be.

The payment under the *Vogt* procedure did not change that fact. Continental is correct that when a party pays to preserve a subrogation right with regard to the party making the settlement offer, as under the *Vogt* procedure, the paying party cannot be considered a volunteer. What Continental has overlooked, however, is that the *Vogt* procedure and the effect on subrogation rights is limited to the party offering the settlement. It is important to note what the *Vogt* procedure did not do. It did not alter the basic structure of the lawsuit. It did not alter the contingent nature of A&F's liability. A&F had no obligation under the policy

to pay before confronted with Midwestern's settlement offer, and it incurred no legal obligation under its policy by making this payment pursuant to *Vogt*. All the *Vogt* procedure did was present A&F with a choice. All the payment by A&F did was preserve its subrogation rights with regard to the party making the settlement offer, namely, Midwestern. Continental was not implicated or affected by the *Vogt* payment. *Vogt* does not require any actions with regard to parties not extending settlement offers, and a *Vogt* payment does not have any effect with regard to subrogation against such parties. However, we do not reach the issue of whether A&F could be considered a volunteer with regard to Continental. Our present holding is limited to the waiver and burden of proof issues. Continental has failed to show that subrogation was required in view of A&F's admitted reliance on the reimbursement clause.

We conclude therefore that under the facts of this case the burden of proof was on Continental to prove that subrogation against it by A&F was the only remedy A&F had to recoup the $50,000 payment to its insured. This Continental failed to do.[14]

---

[14] The concurrence claims to have "applied" the collateral source rule to resolve this case when it states that "[i]f no subrogation exists, the collateral source rule applies, and the plaintiff can recover twice—once from its insurance company and again from the tortfeasor." In the context of waiver, however, the double recovery situation is averted before the collateral source rule would ever be reached. The reason there is no double recovery problem here is not because we *allow* the plaintiff to collect twice per the collateral source rule or any other "rule." Rather, there is no double recovery problem because subrogation was waived in favor of a reimbursement action to which the Jindras are still subject.

It was clear to all parties involved that A&F was relying upon its reimbursement clause. This it may do. According to the terms of the reimbursement clause, A&F could only obtain reimbursement of the $50,000 payment after the Jindras had been fully compensated by the judgment.[15] There is no problem of double recovery here. When an insurance company relies upon a reimbursement clause, the plaintiff does not collect twice but would still be subject to the reimbursement clause. Should the insurer subsequently waive its reimbursement claim or allow the reimbursement action to lapse, then it is the insurance company which would lose its own money by its own actions. There is no reason why any amount lost in such a situation should not properly remain with the plaintiff.

Nor are Continental's interests slighted. The wrongdoer is entitled to expect protection from double exposure to liability. This is provided. Since A&F represented to the court that it was relying upon the reimbursement clause and not upon subrogation, A&F would be held to have effectively waived any possible subrogation rights against Continental and would be precluded from raising such claims against Continental in a subsequent action. If a party in Continental's position wishes to go further and impose subrogation, it has the burden of proof to show that subrogation was available and that it had to apply. Or, in the context of waiver, if a party in Continental's position wishes to

[15] In the 1988 amendment to A&F's policy, the following paragraph was added to the "Our Right to Recover Payment" clause:

We shall be entitled to a recovery under paragraph A. or B. only after the person has been fully compensated for damages by another party.

610

impose subrogation despite the claim of waiver, it may do so only by proving either the unavailability or ineffectiveness of the waiver. This Continental failed to do.

Thus we affirm the court of appeals' decision that Continental must pay the total amount of damages found by the jury to the Jindras, and not be allowed a reduction for the $50,000 paid by A&F.

■■■■

Continental also argued that A&F did not participate sufficiently in the case to be an "aggrieved" party for the purposes of appeal. It cited, *State ex rel. Opelt v. Crisp,* 81 Wis. 2d 106, 112, 260 N.W.2d 25 (1977). That case, citing *Greenfield v. Joint County School Comm.,* 271 Wis. 442, 447, 73 N.W.2d 580 (1955), observes that ". . . A person is aggrieved by a judgment whenever it operates on his rights of property or bears directly on his interest. An 'aggrieved party' within the meaning of a statute governing appeals is one having an interest recognized by law in the subject matter which is injuriously affected by the judgment." Since A&F participated in the litigation and was included by the Jindras jointly in the pleadings, and since the circuit court's judgment was based, in part, upon how it handled A&F's claims, and since the circuit court's order would effectively deny A&F a reimbursement claim, we conclude that A&F is an "aggrieved" party.

*By the Court.*—The decision by the court of appeals is affirmed and cause remanded for further proceedings not inconsistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I agree with the majority opinion that the decision of the court of appeals should be affirmed. I write separately

because I have a somewhat different approach to this case than the majority.

In this case the plaintiff's insurance company paid the plaintiff under his underinsurance coverage (although the company's liability was contingent). According to the majority opinion, the company waived its subrogation rights under the insurance policy and relied on the reimbursement clause in the insurance policy which requires the plaintiff to reimburse the insurance company to the extent of its payment after the plaintiff recovers damages from another. Majority opinion at pp. 589, 596. While some might protest that the majority opinion does not adequately explain how it arrived at these holdings, for purposes of this concurrence I accept the holdings.

Once the majority has held that the company waived subrogation and relied on the reimbursement clause, the issue on review becomes whether under these circumstances the tortfeasor's (and his insurer's) liability on a judgment may be decreased by the amount the plaintiff's insurance company has paid to the plaintiff. I would analyze this issue in the following way.

There are two types of subrogation: contractual and equitable (imposed by law). This case involves contractual subrogation. The insurance policy has an express subrogation clause in the contract that covers this fact situation. Furthermore, the subrogee (the insurance company) has waived its contractual rights to subrogation; the waiver covers this fact situation. The insurance company's waiver of its subrogation rights distinguishes this case from *Heifetz v. Johnson,* 61 Wis. 2d 111, 211 N.W.2d 834 (1973). and *Vogt v. Schroeder,* 129 Wis. 2d 3, 383 N.W.2d 876 (1986).

An insurance company can waive its right of subrogation in favor of the insured. *Leonard v. Bottomley,* 210 Wis. 411, 417, 245 N.W. 849 (1933). By waiver, the insurance company in this case in effect assigned its claim against the tortfeasor to the plaintiff.

As a result of the waiver (assignment), the plaintiff owns the entire claim and can bring suit against the tortfeasor for the entire claim. Under these circumstances the tortfeasor is not at risk of double, multiple or otherwise inconsistent obligations such as paying once to the plaintiff and once again to the plaintiff's insurer. In this case, the tortfeasor will pay only once—to the plaintiff.

Once an insurance company has waived its right to subrogation, subrogation no longer exists. *Anderson v. Garber,* 160 Wis. 2d 389, 402, n.5, 466 N.W.2d 221 (Ct. App. 1991) (relying on *Radloff v. General Cas. Co.,* 147 Wis. 2d 14, 18–19, 432 N.W.2d 597 (Ct. App. 1988). If no subrogation exists, the collateral source rule applies, and the plaintiff can recover twice—once from its insurance company and again from the tortfeasor. *Rixmann v. Somerset Public Schools,* 83 Wis. 2d 571, 580, 266 N.W.2d 326 (1978); *Lambert v. Wrensch,* 135 Wis. 2d 105, 121, 399 N.W.2d 369 (1987).

Thus, consistent with principles of subrogation and the collateral source rule, a tortfeasor who is legally responsible for the harm should not receive the windfall of being absolved from liability when the plaintiff paid for the insurance protection and the plaintiff's insurance company waived its subrogation claim in favor of the plaintiff.

I do not think that the doctrine of equitable subrogation applies when the subrogee (the insurance company) has waived its subrogation rights, as it did in this case. The insurance company is protected as much

as it wanted to be. The policyholder received just what he bargained for.

Nevertheless the majority goes on to discuss equitable subrogation, asserting that equitable subrogation may be, but need not be, imposed on the basis of the insurance company's payment to the plaintiff regardless of the waiver. Is the majority asserting that courts will examine the waiver of contractual subrogation as contrary to public policy?

Whether to impose an offset on equitable considerations is a question of law for the court. Thus I am somewhat puzzled by the majority's emphasis on burden of proof, a doctrine applicable to proof of facts, not to balancing equities as a matter of law. According to the majority opinion, the only matter to be decided by the court in the procedural morass of this case is the fairness of the offset in the tortfeasor's favor. In other words, who should benefit from the plaintiff's insurance company's waiver of the subrogation rights in this case: The tortfeasor? Or the plaintiff who purchased the policy for self protection, received the "assignment" of the insurance company's rights to subrogation, and agreed to reimburse his company to the extent of its payment when and if he recovered damages from the tortfeasor?

The tortfeasor might argue for an offset on the equitable principle that the plaintiff will be unjustly enriched by a double recovery, once from his insurance company and again from the tortfeasor. The counter equitable argument is that because of the reimbursement clause it is not certain that the plaintiff will recover twice. In the absence of unjust enrichment, the equitable doctrine of subrogation does not apply. *Lee v. Threshermen's Mutual Ins.*, 26 Wis. 2d 361, 265, 132 N.W. 534 (1965). Furthermore, if an offset were

allowed, the tortfeasor would pay less than the loss he inflicted. Such a result contravenes the principle in equitable subrogation that the loss should be placed ultimately on the wrongdoer. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 444, 360 N.W.2d 33 (1985); *Employers Health Ins. v. General Casualty Co.,* 161 Wis. 2d 937, 956, 469 N.W.2d 172 (1991).

Assessing these equitable considerations, I reach the same answer I reached when applying the principles of subrogation and the collateral source rule. The tortfeasor does not get an offset. On equitable principles a tortfeasor who is legally responsible for the harm should not receive the windfall of absolution from liability when the plaintiff paid for the insurance protection, the plaintiff's insurance company waived its subrogation claim in favor of the plaintiff, and the plaintiff agreed to reimburse the company when it recovered damages from another.

I am authorized to state that Justice WILLIAM A. BABLITCH joins this opinion.

STEINMETZ, J. *(dissenting.)* The majority errs when it attempts to avoid applying *Heifetz v. Johnson,* 61 Wis. 2d 111, 211 N.W.2d 834 (1973), in this case. In particular, the majority mischaracterizes how this court limited *Heifetz* in *Rixmann v. Somerset Public Schools,* 83 Wis. 2d 571, 579, 266 N.W.2d 326 (1978). *Rixmann,* in fact, only limits the *Heifetz* holding to cases involving indemnity insurance contracts. In other words, *Rixmann* holds that *Heifetz* does not apply to investment insurance contracts. In this case, the Jindras' automobile insurance contract with A&F is indisputably one of indemnity. *See Rixmann* 83 Wis. 2d at 578. Hence, *Heifetz* should apply.

Here, A&F paid the Jindras approximately $50,000.[1] *Heifetz* should apply to bar the plaintiffs from making a claim for this amount. "Acceptance of payment from an insurer operates as an assignment of the claim . . . The plaintiff loses his right to sue for any amount received from his insurer." *Heifetz,* 61 Wis. 2d at 124. This is still the law in Wisconsin in cases dealing with indemnity insurance contracts.

Under *Heifetz,* as soon as the Jindras accepted this payment from A&F, they assigned their claim for this amount to A&F. The majority asserts that A&F waived its right to this subrogated claim, and thus, the Jindras were again entitled to recover these damages.[2] If this is the case, A&F might then be entitled to reimbursement from the Jindras based on a reimbursement clause in the insurance contract.

The outcome of this alleged waiver contravenes the outcome prescribed in *Heifetz.* Hence, contrary to the majority's assertion, A&F should have the burden of proving that it avoided *Heifetz* by waiving its right to subrogation. Public policy also favors placing this burden on A&F. The Jindras, and possibly A&F, are the only parties benefiting from the alleged waiver. In addition, A&F, not Continental, has access to any evidence concerning this waiver.

A&F has certainly not met this burden. In fact, as footnote 2 points out, A&F has not even attempted to prove that it waived its subrogated claim to the $50,000. The evidence presented to the trial court more likely demonstrates that A&F did not intend to waive

---

[1] This payment was made pursuant to a provision in the insurance contract that is based on the procedure this court set out in *Vogt v. Schroeder,* 129 Wis. 2d 3, 20–22, 383 N.W.2d 876 (1986).

[2] A&F did not even make this argument to this court.

its claim. Rather, A&F initially followed the *Vogt* procedure in an effort to preserve its subrogation right. The affidavit of A&F's claims manager admits as much. Only after A&F realized that its efforts had failed did A&F allege that it never intended to assert its subrogated claim. Hence, following *Heifetz,* I would reverse the court of appeals' decision and hold that the trial court properly reduced the judgment against Continental by the $50,000 already paid to the Jindras by A&F.

I am authorized to state that JUSTICE JON P. WILCOX joins this dissenting opinion.